## PATY vs HARRELL.

The court can exercise no jurisdiction in review of the acts of swamp land agents in pre-emption cases: but if a person makes use of an official act to perpetrate a fraud upon another, he shall be deprived of any benefit that has thereby accrued to him to another's prejudice.

Attaching equal credibility to the statements of the witnesses on both sides, the whole testimony does not preponderate in favor of the plaintiff. In such case better is the condition of the defendant, and his legal title having been acquired without fraud upon the plaintiff, must prevail.

*Appeal from Pulaski Chancery Court.*

Hon. URIAH M. ROSE, Chancellor.

GARLAND & RANDOLPH, for appellant.

Mr. Justice FAIRCHILD delivered the opinion of the court.

Within sixty days previous to the public sale of swamp lands made by the land agent for the Little Rock land district, in May, 1859, both of the parties to this suit produced proofs of a pre-emption right to the north-east quarter of the south-east quarter of section thirty-one, in township two south, of range one west, and each claimed the right to be the preferred purchaser thereof ; but as Paty first applied he was the successful claimant, has become invested with the legal title to the land.

Mrs. Harrell, the plaintiff below and appellee here, conceiving her claim to the land to be paramount to that of Paty, filed a bill in the court below, to have the title divested from Paty

and decreed to be in herself, in which effort she was successful, and Paty has appealed from the decree rendered against him.

According to the testimony in the case, which is ample upon both sides, Mrs. Harrell did procure an improvement to be made upon the land in controversy : but upon this, the question arises, whether Paty obtained his title fraudulently and to the injury of Mrs. Harrell. If it were permissible to different parties, having improvements upon the same tract of land, to prosecute their respective claims, every claimant would have the right to prosecute his own claim with all the diligence he could exert, and with all the skill at his command : and his success would not give his adversaries any right to question his title, if he had not acted unfairly towards their pretensions. In such a case as the one before the court, the affidavit required by the law, that there was no other improvement on the land sought for than the one presented by the affiant, would seem to exclude the idea of there being two improvements of sufficient merit to justify the claims of different persons to one piece of land ; but it does not appertain to either of the parties to make this objection for each one of them has made the affidavit, and each one has adduced abundant proof of their respective claims, and of their respective improvements.

This court has often held, in this class of cases, generally upon the official acts of swamp land agents and officers, that it can exercise no jurisdiction in their review. But if a person makes use of an official act to perpetrate a fraud upon another person, he shall be deprived of any benefit that has thereby accrued to himself to another's prejudice. This is the only ground upon which courts of chancery can interfere with the legal rights that are contested in these conflicting pre-emption cases.

The present controversy has existed between the plaintiff and the persons under whom the defendant claims, from the time she first attempted to improve the land in question. For when John M. Harrell first essayed an improvement for the plaintiff, he was encountered by Sanders, who forbid him to improve upon the

quarter section of land that included the forty acre tract in dispute, as Sanders claimed the land. Thenceforward, Sanders, Ramsey, and the defendant, persisted in making the same claim till it was recognized as valid by the land agent in his preferred sale of the land to the defendant. Nor is there any fraud apparent in putting forth this claim, unless it result from converting an insufficient improvement into a pre-emption right.

The cases of *McIvor vs. Williams,* and of *Wright vs. Green,* decided at the present term, contain instances of alleged improvements that we held insufficient to attack legal titles, that were complained of as resting upon bad improvements. But in this case, the plaintiff has, by allegation and proof, made a good case so far as concerns the quality of her own improvement, and it may then be insisted with more plausibility that the character of the defendant's improvement shall be taken into consideration, that its comparative insignificance, and beginning after the existence of her own improvement, may impress upon it a fraudulent character, when urged against her better and prior claim.

It is, however, unnecessary to consider this point until it shall be determined that the case of the plaintiff shall be found to stand good against the opposing testimony of the defendant.

The plaintiff claims that her right is prior to the claim of Sanders, and to the establishment of this point her evidence seems to be directed. But the defendant has met this claim with opposing evidence.

Sanders testifies that he claimed the land in controversy in July, 1856, and that, shortly after this, John M. Harrell came on to the land to make an improvement upon it for the plaintiff, when he, Sanders, notified Harrell that the land was his from purchase, and forbid Harrell from cutting upon it, and that Harrell replied, that he had not known that the land belonged to Sanders, and that he would not touch it again. Sharp gives Harrell's reply as being that he did not wish to interfere with the right of any one.

Sanders is positive that Harrell made no improvement in 1856,

and he never knew that she had any claim upon the land. His knowledge extends to July, 1858, when he sold his right to this land, with others, to Ramsey.

Sharp says that in 1856, John M. Harrell had come to the neighborhood of the land to make improvements, and enter land for himself and for his mother, the plaintiff; that when Sanders forbid him from improving on the land in controversy, Harrell asked for some one to show him a corner so that he could run his line correctly without interfering with the rights of any one, and that Sanders showed him a corner and gave him a start on a line. Sharp also stated that Harrell made an improvement on land adjoining that in controversy.

Rice deposed that in November, 1857, he moved down to the neighborhood, where the parties to the suit now live, that he leased lands from Harrell, but not the piece of land in suit, but that in improving upon Mrs. Harrell's land, he ran over on the land in controversy by mistake, and that he so told John M. Harrell. He says, also, that in November, 1857, there was no improvement on the land except one that he understood was made by the defendant.

Williams contradicts the testimony of John M. Harrell in some important particulars, but gives no date to the beginning of the improvement of Sanders, further than to say, that eighteen months before testifying, in July, 1859, there was a turnip patch on the land belonging to Sanders. He shows a continuous claim of the land from the first of January, 1858, by Sanders, Ramsey and the defendant, as a pre-emption right.

Morrison goes further back than Sanders, or the answer of the defendant, in showing an improvement on the land in question, in 1855, and says that no work had been done on the land up to 1858, but what had been done by Lewis, Sanders, Ramsey and the defendant. Lewis was the one from whom Sanders bought his claim to the land.

Ramsey testifies that the only improvement made by Mrs. Harrell on the land was made by Rice, and this could not have been made before the last of 1857.

According to the testimony of the defendant, Mrs. Harrell clearly had no improvement upon the land till after the turnip patch of Sanders had been·cleared, enclosed and planted. This is contrary to the case proven by Mrs. Harrell. Attaching equal credibility to the statements of all of the witnesses, Mrs. Harrell's case is neutralized by that of the defendant. She is the plaintiff; the whole testimony does not preponderate in her favor; it makes, at best, for her but a balanced case, and that is not enough. In such a state of things, better is the condition of the defendant. When to this consideration is added that of the defendant having the legal title, and that, as is seems to us, he has obtained this without fraud upon the plaintiff, we are satisfied that Mrs. Harrell ought not to have the benefit of the decree given her by the court below, and it is accordingly reversed, and her bill is dismissed.