Wali MUHAMMED *v.* ARKANSAS SUPREME COURT
COMMITTEE ON PROFESSIONAL CONDUCT

86-145                                    722 S.W.2d 280

Supreme Court of Arkansas
Opinion delivered January 12, 1987

30

Appellant, pro se.

*Steve Clark*, Att'y Gen., by: *David S. Mitchell*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This appeal is from a determination by the Arkansas Supreme Court Committee on Professional Conduct that the appellant's attorney's license be suspended for one year. The appellant contends that the evidence before the committee was insufficient to support the suspension, that the committee's action was contrary to the law and the facts, and that the committee lacked authority to suspend his license.

■ The committee found the appellant had violated DR 1-102(A)4 which was in effect at the time of the appellant's alleged misconduct and which provided that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misconduct. *See* T. Robinson, The Arkansas Code of Professional Responsibility, 33 Ark. L. Rev. 605, 616 (1980). Rule 8.4(c) of the Model Rules of Professional Conduct which became effective January 1, 1986, (*see* our per curiam order of December 16, 1985) contains virtually the same provision. We find the evidence was sufficient and the committee had the authority to effect the suspension. After summarizing the evidence before the committee, we will discuss first the committee's authority and then discuss together

the appellant's contentions that the committee's decision was not supported by sufficient evidence and was contrary to the law and the facts.

The complaint to the committee against the appellant was filed by Robert L. Pierce, an attorney. Pierce had represented Jimmy Wilkerson in pursuing a workers' compensation claim against Wilkerson's employer. Pierce's representation of Wilkerson terminated and was taken over by the appellant and the appellant's law partner Mike Smith. Pierce and the appellant both testified they had reached an agreement to split equally the attorney fee to be received from the insurance company which would pay the workers' compensation claim. Pierce testified he learned from Mr. Baldridge, an insurance company official, that the Wilkerson case had been settled. Later he spoke with Baldridge and learned the insurance company had issued the attorney fee check. He testified he then tried numerous times to telephone the appellant who would not return his calls, and he thereafter filed his complaint with the committee in the form of an affidavit.

Pierce's affidavit, which he reaffirmed in his testimony, stated that when he learned from Baldridge that the insurance company check had been sent to Smith and Muhammed, he asked Baldridge to send him a copy of the front and back of the check. The check, a copy of which was before the committee, shows endorsement by "Pierce and Stanley." Pierce's affidavit stated that neither he nor Mr. Stanley nor Mr. Robinson (apparently another partner of Pierce) endorsed the check. The complaint was dated December 6, 1985.

Pierce further testified that the appellant came to Pierce's office in December after Pierce had made the complaint which formed the basis of this action, and gave him a check for $400. Pierce testified he asked the appellant why the check was only for $400 and not $450 or half of the $900 fee and that the appellant had no explanation but said he would pay the rest. He testified he also asked the appellant why he had endorsed his (Pierce's) firm's name on the check. He said the appellant "replied, gave his answer," and the issue was dropped from that conversation.

Presumably the answer given Pierce by the appellant was the same as the appellant's testimony before the committee. The

appellant testified that he had endorsed the check by signing it "Pierce and Stanley" after having been specifically authorized by Pierce to do so. He further testified that he mailed his firm's check for $400 to Pierce in September, rather than delivering it December, 1985, and that the reason it was for $50 less than half the $900 fee was that he had subtracted his expenses of $100 before dividing the fee. The appellant produced for the committee's inspection his firm's check to Pierce and Stanley in the amount of $400, dated September 16, 1985. The deposit stamp on the back of the check showed it was deposited on December 16, 1985.

Testimony was also given by the appellant's law partner, Mr. Mike Smith. Smith testified that, at the appellant's direction, he had listened, by way of a speaker phone, to the telephone conversation between the appellant and Pierce in which they agreed to divide the fee equally and that the appellant in that conversation had discussed subtracting his expenses from the $900 fee with the remainder to be divided. Smith further testified that the $400 check from Smith and Muhammed to Pierce and Stanley was mailed to Pierce on September 17, 1985. Upon examination by a committee member, Smith testified he had not seen the check mailed but he had seen the appellant draw it in September and assumed it was mailed shortly thereafter in the normal course of their office's operations.

Smith testified that when the check from the insurance company was endorsed, the appellant wrote "Pierce and Stanley" and Smith wrote "Smith and Muhammed" and that that accounted for the apparent difference in the handwriting of the two endorsements which were written "at the same time."

### 1. The committee's authority

The appellant's brief does not argue or cite any statute or case supporting the position that the committee lacked the authority to suspend his license. In an earlier petition for a writ of mandamus, however, the appellant argued that the committee adopted as its own the new court rules on attorney discipline, on or about June 15, 1985, and that the committee had failed to follow the requirement of Ark. Stat. Ann. § 5-703(d) (Supp. 1985) that the rules be filed with the Arkansas Secretary of State. We denied the appellant's mandamus petition on September 22, 1986. The

appellant argued this point orally in this appeal, and the attorney general, acting as counsel for the committee, responded to the argument by pointing out that § 5-703(d) is part of the Arkansas Administrative Procedure Act which by its terms does not apply to the courts. Ark. Stat. Ann. § 5-701(a) (Supp. 1985). To clarify the matter, we will address it.

The appellant's argument on this point fails for several reasons. First, he has presented us with nothing, other than his statement, to show that our committee adopted the rules. This court adopted them as our own rules on March 11, 1985, when we partially granted rehearing of our earlier decision not to adopt new rules. *In the Matter of the Arkansas Bar Association: Petition for the Adoption of New Supreme Court Rules on Professional Conduct*, 282 Ark. 605, 666 S.W.2d LIX (1984), *reh. granted in part*, 285 Ark. 604, 687 S.W.2d 118 (1985).

We adopted those rules to govern the procedure of our committee in considering matters of professional discipline of attorneys. Whether our committee adopted them independently is irrelevant. Clearly this court is not subject to the Arkansas Administrative Procedure Act.

Rule 7 of the Rules of the Court Regulating Professional Conduct of Attorneys of Law, the rules we adopted March 11, 1985, specifically provides that if the committee finds an attorney has been guilty of professional misconduct it may suspend the attorney. The committee thus had the authority to suspend the appellant's license.

## 2. Sufficiency of the evidence

The conflict between Pierce's testimony and that of the appellant and Smith is direct and substantial. Based on Pierce's testimony the committee could have concluded that the appellant endorsed the insurance company check, by writing "Pierce and Stanley" on it, with no authority whatever and that the appellant made no effort to pay Pierce until after Pierce filed his complaint with the committee. Had the committee believed the appellant's testimony and that of Smith, it could have concluded the appellant had Smith's permission to endorse his firm's name on the insurance company check and that the check drawn on the firm of Smith and Muhammed was mailed to Pierce in Septem-

ber. It was a swearing match.

The appellant cites three cases in support of his argument that the evidence against him was insufficient to support the committee's determination that he violated DR 1-102(A)4. The first is *Fort Smith Gas Co.* v. *Cloud*, 75 F.2d 413 (1935), in which a plaintiff's personal injury judgment was reversed because the trial court should have granted a directed verdict. In reviewing the evidence, the court of appeals concluded that the evidence showed the illness the appellee contended was caused by acts of the appellant was the result of voluntary and unnecessary acts by the appellee. The court noted that the appellee's own evidence also showed he did not contract the complained of illness until after he had, sometime after the alleged misconduct of the appellant, engaged in other acts which might have caused the illness. The court said:

> . . . it is well settled that where proven facts give equal support to each of two inconsistent inferences, judgment must go against the party upon whom rests the burden of sustaining one of these inferences as against the other. [75 F.2d at 416.]

The appellant in the case before us now asks that we apply that language and hold that because the evidence is in dispute we must find in his favor because the burden of proof was not upon him. It is enough to say that the quoted statement applies when the party bearing the burden has proved facts leading to two equally plausible conclusions, only one of which supports his position. It does not apply when there is a direct conflict in the evidence presented by adversaries. *Henry H. Cross Co.* v. *Simmons*, 96 F.2d 482 (1938), also cited by the appellant, is equally inapplicable here for the same reason.

The appellant cites *Paty* v. *Harrell*, 24 Ark. 40 (1862), in which this court, reviewing a chancery decision, found the evidence to be equally probative on both sides. We held that as the evidence presented in the trial court did not preponderate in favor of the party having the burden of proof, the judgment in her favor had to be reversed. We gave no weight whatever to the trial judge's advantageous position with respect to judging the truthfulness of the witnesses. It has been many years since we reviewed chancery cases in that manner. Many early cases held that a

chancellor's factual determinations would be sustained on appeal unless against the preponderance of the evidence. Some of them even used language the same as or similar to that which now appears in Ark. R. Civ. P. 52(a), that is, that unless the chancellor's findings on appeal are clearly erroneous, or clearly against the preponderance of the evidence, they will be affirmed. *Greer* v. *Fontaine*, 71 Ark. 605, 77 S.W. 56 (1903) ("clearly against the evidence"); *Sulek* v. *McWilliams*, 72 Ark. 67, 78 S.W. 769 (1904) ("there is not a reasonably clear preponderance against the decree without which this court will not reverse it"); *Hinkle* v. *Broadwater*, 73 Ark. 489, 84 S.W. 510 (1905) ("clearly against the preponderance of the evidence"); *Taylor* v. *Rudy*, 99 Ark. 128, 137 S.W. 574 (1911) ("against the preponderance of the evidence").

In our *de novo* review of chancery court cases we do not hesitate to reverse where factual findings are clearly against the preponderance of the evidence. *See, e.g., City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981). However, where the preponderance depends largely upon the credibility of the witnesses, we defer to the superior position of the chancellor. *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W.2d 465 (1979). For these reasons we do not feel bound or even persuaded by *Paty* v. *Harrell, supra.*

Under our rules until recently the committee's authority was limited to sanctions short of suspension or disbarment. If the committee sought either of those latter sanctions it could file a complaint in circuit or chancery court. As a result of the adoption of the rules as amended on March 11, 1985, discussed above, our committee now has the authority to suspend but not to disbar. We have decided on appeal several cases resulting from judgments of courts with respect to attorney discipline initiated by our committee. In those cases we have developed a standard of review.

In *Hurst* v. *Bar Rules Committee of the State of Arkansas*, 202 Ark. 1101, 155 S.W.2d 697 (1941), we reviewed the decision of a circuit judge in an attorney discipline case and stated that such cases are civil in nature, the standard for decision is "preponderance of the evidence," and that we would review them *de novo*. We reaffirmed that aspect of the *Hurst* case in *Weems* v. *The Supreme Court Committee on Professional Conduct*, 257

Ark. 673, 523 S.W.2d 900 (1975), *reh. den.* 257 Ark. 685-A, 523 S.W.2d 900 (1975), where we particularly noted that portion of the *Hurst* case in which we had said that in view of the safeguards provided to an attorney accused of misconduct by allowing him or her to present evidence to the committee and then to the circuit (or chancery) court we would give special deference to the judge's findings.

■■ In *Walker* v. *Supreme Court of Arkansas Committee on Professional Conduct*, 275 Ark. 158, 628 S.W.2d 552 (1982), we had before us an appeal from discipline administered directly by our committee. Although not explicitly, we apparently applied the same standard of review we had applied in the reviews of court decisions. We held the findings of the committee to be supported by a preponderance of the evidence and said: "The findings of the committee, in this respect [that the appellant had violated the Code], are not contrary to the weight of the evidence and must be affirmed," citing the *Hurst* case. We reach the same conclusion in the case before us now. As the finder of fact, our committee must be free to believe or disbelieve the witnesses who appear before it when their testimony is conflicting. Pierce's testimony, which formed the basis for the committee's action, was substantial evidence that the appellant had endorsed the name "Pierce and Stanley" on the insurance company check without Pierce's permission and that the appellant made no effort to live up to his agreement with Pierce until after Pierce had complained to the committee. Based on that evidence, the committee was entitled to find that the appellant violated DR 1-102(A)4. We do not reverse decisions made by the Arkansas Supreme Court Board of Law Examiners, which we also review *de novo*, unless we find the board's decision to be clearly erroneous, *Scales* v. *State Board of Law Examiners*, 282 Ark. 578, 669 S.W.2d 895 (1984), and we will treat the findings of our committee on professional conduct the same way.

Before concluding this opinion, we must note that in his brief and during his oral argument before us the appellant contended that the only reason for the decision adverse to him is that he is a black person and his accuser is white. He contends that in another attorney fee dispute case which came before our committee no action was taken, and he argues that the only reason the committee has taken up this case is because of racial reasons. The

appellant presented no testimony or other evidence with respect to the other case to which he has alluded. We have no idea what it was about or how to compare it with the appellant's case. Our committee was certainly correct, however, in not regarding this case as a mere dispute over a fee. The appellant has presented no evidence whatever that either Pierce or the members of our committee were racially motivated in their actions.

Affirmed.

GLAZE, J., not participating.