G.B. COLVIN, III *v.* COMMITTEE ON
PROFESSIONAL CONDUCT

91-229                                              832 S.W.2d 246

Supreme Court of Arkansas
Opinion delivered June 15, 1992

*Compton, Prewett, Thomas, & Hickey, P.A.*, by: *Robert C. Compton*, for appellant.

*Hoover, Jacobs, & Storey*, by: *Lawrence J. Brady*, for appellee.

ROBERT H. DUDLEY, Justice. Our Committee on Professional Conduct suspended the attorney's license of appellant, G.B. Colvin, III. We reversed and remanded. *Colvin* v. *Committee on Professional Conduct*, 305 Ark. 239, 806 S.W.2d 385 (1991). The Committee conducted a second hearing and again voted to suspend the attorney's license, this time for six months. We affirm the Committee's action.

In his brief, appellant Colvin argues that the Committee's decision is not supported by either the evidence or the law and should be modified. In oral argument, he expanded the argument and contended that *de novo* review means that we should totally disregard the Committee's finding of facts.

In *Muhammed* v. *Arkansas Supreme Court Committee on Professional Conduct*, 291 Ark. 29, 722 S.W.2d 280 (1987), we thoroughly discussed the standard of review of the Committee's actions and wrote that the Committee's factual determinations would be sustained on appeal unless clearly erroneous. The reason is that the Committee is in the superior position to determine the credibility of the witnesses and weigh the preponderance of the evidence. After discussion of the reasons for the standard we concluded:

> We do not reverse decisions made by the Arkansas Supreme Court Board of Law Examiners, which we also review *de novo*, unless we find the board's decision to be clearly erroneous, *Scales* v. *State Board of Law Examiners*, 282 Ark. 578, 669 S.W.2d 895 (1984), and we will treat the findings of our committee on professional conduct the same way.

*Id.* at 36, 722 S.W.2d at 284.

The underlying facts show that one of appellant's clients, Tony Reginelli, filed a complaint with the Committee alleging that his suit for personal injuries was dismissed with prejudice due to appellant Colvin's failure to respond to requests for admissions and interrogatories within the time allowed by a court order, and that appellant did not tell him about either the court order, his failure to respond, or the dismissal. A hearing was held, and the allegations proved to be true. In addition, the proof showed that appellant made a conscious decision not to answer either the requests for admissions or the interrogatories. He testified:

> At the time I received these interrogatories and received the cut-off date, I can distinctly remember sitting with my secretary and stating, "We're going to get knocked out of court if we don't answer this, but we had Robert Johnson who was set for trial."

> Mr. Johnson was charged with killing Mr. Henry Tumey [phonetic]. Mr. Johnson was black, Mr. Tumey was white.

> I had a choice of doing some good for an individual charged in a criminal case or wasting time in a civil suit that I could not win.

Further, appellant Colvin affirmatively stated that he made a conscious decision to take care of his criminal cases, instead of the Reginelli case, and that he did not inform Reginelli of his decision. Appellant has abstracted a part of his testimony from the most recent hearing as follows: "I have never denied that I did not promptly and diligently handle Mr. Reginelli's legal matters and I freely admit that now and I know that I was in violation of that canon of promptness and diligence." The Committee found that appellant violated Rule 1.3 of the Model Rules of Professional Conduct, which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Obviously, we cannot say that the Committee's finding of fact was clearly erroneous, and based upon that finding of fact, the Committee could validly conclude that appellant violated Rule 1.3.

Appellant recognizes that, upon a finding of a violation

of the Model Rules, the Committee may suspend him. *See* R. Prof. Cond. 7(A) (1990). He alternatively argues that, even if the Committee's decision that he violated the rule is affirmed, it should be modified to conform to precedents established by the Committee. Without authority or convincing argument he asserts that the sanctions made public and published "in the larger state newspapers and the *Arkansas Bar Journal*" should be considered as precedent and applied to this case. The argument is without merit for a number of reasons. First, there is reason to question the validity of appellant's statistics used in his argument because he uses statistics compiled from only August through October of 1989. Second, subject to certain exceptions, confidentiality of all communications, complaints, formal complaints, testimony, and evidence based upon a complaint is absolutely privileged. Model R. Prof. Cond. 4.1 — 4.4. As a result, the facts of each Committee decision made public are not revealed or made known to this court for any consideration or determination of precedential value. Third, even if the statistics were valid, we have stated in the context of criminal law that we will not reduce or compare sentences that are imposed within statutory limits. *Dunlap* v. *State*, 303 Ark. 222, 795 S.W.2d 920 (1990). In the civil context of damages awards, a comparison of awards made in other cases cannot be relied on as a measure of excessiveness. *Clark County Lumber Co.* v. *Collins*, 249 Ark. 465, 459 S.W.2d 800 (1970). Thus, we reject the argument.

■ The Committee's action was within the range of sanctions for a violation of a provision of the Model Rules. Consequently, the decision of the Committee is affirmed.

GLAZE, J., concurs.

BROWN, J., not participating.

TOM GLAZE, Justice, concurring. Appellant raises a serious question regarding the possible inconsistent application of the Committee's four sanctions because our court's rules fail to describe the type of misconduct that is covered under each sanction. Guidelines, in my view, should be established as an aid so the Committee would have clear standards to follow when considering an attorney's misconduct and the sanction it should impose. In fairness, an attorney should have some advance knowledge concerning which sanction(s) he or she may expect considering the complaint and allegations filed against him or her.

Appellant suggests the following guidelines which I think are worth of consideration.

(1) WARNING — to be given when there is some reasonable question as to whether there was in fact a violation.

(2) CAUTION — to be given when there has been a violation but no irreparable harm.

(3) REPRIMAND — to be given when there has been a violation with irreparable harm.

(4) SUSPENSION — to be imposed when the violation is intentional or includes moral turpitude.

First, I should point out that the above guidelines fail to help the appellant because, as the majority opinion reflects, the Committee's finding was not clearly erroneous in deciding the appellant "consciously" or intentionally violated Rule 1.3. Nonetheless, appellant's suggested guidelines are no less worthy of this court's consideration when such guidelines, or ones like them, could be adopted and utilized to assure consistency in administering sanctions. Without such guidelines, the Committee, considering the large number of cases it hears and decides, innocently runs the risk of imposing different sanctions to situations where the same or similar misconduct may be involved.

The guidelines suggested by appellant present a starting point from which our Committee and this court can begin to

improve the sanction stage of our court's procedure under our rules regulating the professional conduct of attorneys. Everyone agrees, administering sanctions is a serious business, especially when an attorney's license and privilege to practice law is suspended for any time. This court can ensure fairness now missing in this process by defining the sanctions that are available to the Committee and by describing the misconduct to which each sanction applies.

Although I agree with the decision reached by the majority, I believe it may prove worthwhile to memorialize appellant's suggested sanction guidelines. Knowing there are other members on this court who share the view that the court's sanctions should be defined, I recommend our Committee consider these foregoing guidelines along with any others it may find worthy of consideration.

In my view, notice and due process considerations are appropriate matters for this court to consider when an attorney's privileges to practice law becomes an issue. The court's present rules are inadequate in affording proper notice regarding possible sanctions, and the court and its Committee should take this opportunity to correct those deficiencies.