Robert R. CORTINEZ, Sr. *v.*
ARKANSAS SUPREME COURT COMMITTEE ON
PROFESSIONAL CONDUCT

02-822                                                    111 S.W.3d 369

Supreme Court of Arkansas
Opinion delivered May 1, 2003

*Robert R. Cortinez*, for appellant.

*Nancie Givens*, Acting Executive Director, and *Ann R. Dodson, Staff Attorney*, for appellee.

R AY THORNTON, Justice. Mr. Robert R. Cortinez, Sr., appeals from a decision of Panel C of the Arkansas Supreme Court Committee on Professional Conduct finding him in violation of Rule 1.5(a) of the Model Rules of Professional Conduct for charging his client, Ms. Carolyn Russell, an unreasonable fee in light of the legal services that Mr. Cortinez performed in securing for his client her husband's release from the Jefferson County Regional Hospital. The Panel formally cautioned Mr. Cortinez for his conduct in the matter.

The Panel adopted as its own findings and conclusions the draft prepared by the staff of the Office of Professional Conduct supporting the imposition of the penalty of a caution.

Mr. Cortinez contends that he accepts the sanction of a caution imposed by the Panel, but that he challenges the findings and conclusions upon which the order is based. He contends that he is entitled to seek a limited review of the Panel's actions for the purpose of striking the language used in the draft of the findings and order prepared by the Office and adopted by the Panel.[1]

The original complaint brought by the Office charged Mr. Cortinez with a violation of Model Rule 1.3 for failure to complete an irrevocable trust as agreed, notwithstanding the payment of a substantial legal fee of $4,000.00 for such work. The Office also charged a violation of the requirement of Rule 1.4(a) that a lawyer keep a client reasonably informed about the status of a pending matter, namely the preparation of the trust. The panel did not find a violation of Model Rule 1.3 or Rule 1.4(a).

The Office further charged a violation of Model Rule 1.5(a), stating in its complaint:

Your conduct, collectively and singularly, violated Model Rule 1.5(a) to wit:

1. You were paid $5,750.00 by your client, Mrs. Russell, to obtain the release of her husband from the Jefferson Regional

---

[1] As a threshold matter, we note that Mr. Cortinez has cited no precedent or authority for this court to conduct the limited review that he requests. As more fully developed later, our standard of review must be *de novo* on the record.

Memorial Hospital. The fee was unreasonable in light of the amount of work performed.

Following a referral of these charges to Panel A of the Committee, Mr. Cortinez requested a formal hearing, and a meeting of Panel C was convened for the purpose of providing that hearing on February 22, 2002. Mr. Cortinez obtained depositions from witnesses and produced documentation of some work product on the irrevocable trust, as well as testimony regarding the efforts to obtain Mr. Russell's release from the hospital and a rehabilitation center. Mr. Cortinez submitted time sheets purporting to document time to support fees aggregating $11,706.70. However, cross-examination evoked serious credibility problems with these time sheets.

On the basis of the evidence before it, and after weighing the credibility of the witnesses, on March 11, 2002, the Panel, after reviewing the formal complaint, exhibits, responses, and evidence, did not find a violation of Model Rule 1.3 or Model Rule 1.4(a) of the Arkansas Model Rules of Professional Conduct, but found that appellant violated Rule 1.5(a) of those rules when he charged Mrs. Russell $5,750 to obtain the release of her husband from the hospital. Based upon the Panel's determination that the fee was unreasonable in light of the amount of work performed, the Panel cautioned appellant for his conduct in the matter, but did not order restitution. No evidence was offered by the Office as to what portion of the $5,750.00 would be appropriate as a reasonable fee.

The Office filed a cross-appeal seeking that the Panel's order be modified on appeal to order restitution of the amount of $5,750.00 paid for services in securing Mr. Russell's release from the Jefferson County Hospital, and also seeking costs to be awarded to the Office.

Mr. Cortinez contests the allegations and prayers of the cross-appeal. We conclude that the actions of Panel C should be affirmed both on appeal and cross-appeal.

Our review in this appeal is from the decision of Panel C, rather than Panel A. Section 11A of the *Procedures of the Court Regulating Professional Conduct of Attorneys at Law* outlines the pro-

cedures which are followed when a public hearing is requested after a ballot vote. Section 11A states:

> A. A panel will be so notified, and the written ballots if any, will be destroyed. The prior findings and decision shall be for naught and a panel will hear the complaint de novo under the rules for public hearings. The public hearing shall be heard before a seven-member panel of the Committee, the members of which will be selected by the Chairperson of the Committee, none of whom shall have been members of the original ballot-vote panel.

*Id.* Because the votes from Panel A should have been destroyed and the findings and decisions from Panel A are considered nonexistent, our review is exclusively from the findings of Panel C.

■ In *Cortinez v. Supreme Court Committee on Professional Conduct,* 332 Ark. 456, 966 S.W.2d 251 (1998), we articulated our standard of review and stated:

> We review a decision of the Supreme Court Committee on Professional Conduct [the Panel] *de novo* on the record and pronounce judgment as if our opinion had been rendered by the Committee. *Fink v. Neal,* 328 Ark. 646, 945 S.W.2d 916 (1997). We affirm the Committee's action unless it is clearly against the preponderance of the evidence and do not reverse the Committee's findings unless they are clearly erroneous. *Id. See also Colvin v. Committee on Professional Conduct,* 309 Ark. 592, 832 S.W.2d 246 (1992); *Muhammed v. Committee on Professional Conduct,* 291 Ark. 29, 722 S.W.2d 280 (1987). The Committee is in the superior position to determine the credibility of the witnesses and weigh the preponderance of the evidence. *Colvin, supra.*

*Cortinez, supra. See also* Section 12B of the *Procedures of the Court Regulating Professional Conduct of Attorneys at Law* (2001). We note that this standard of review was articulated in a case in which Mr. Cortinez was a party.

For his first point on appeal, appellant argues that the Committee exceeded its authority by including findings of fact and conclusions of law in the order prepared by the staff and adopted by the Panel because those findings of fact and conclusions of law were not announced orally by the committee at the conclusion of the hearing.

At the hearing, Chairman Newbern stated:

> We are back in public session now, and it's my duty to announce the vote of the Committee, which is that the Respondent be issued a caution with respect to a violation of Rule 1.5(a), and more specifically with respect to sub-section (B) (1) of the Complaint.
>
> The vote was not unanimous. All of the members voted in favor of the result with the exception of Hout and Mourton.

Hearings before the Committee are administrative proceedings carried out through an administrative agency, the Committee on Professional Conduct. *Walker v. Supreme Court Committee on Professional Conduct*, 275 Ark. 158, 628 S.W.2d 552 (1982). Section 11D of the *Procedures of the Court Regulating Professional Conduct of Attorneys at Law* (2001) provides:

> If a majority of the panel votes to caution, reprimand, or suspend an attorney, the Office of Professional Conduct shall be so advised, and shall notify the complainant of the specific action taken against the attorney. The Office of Professional Conduct will prepare, with the advice and consent of the panel, the Findings and Order, and a copy shall be filed as a public record in the office of the Clerk.

*Id.*

██ We construe court rules using the same criteria, including canons of construction, that are used to interpret statutes. *See Gannett River States Pub. Co. v. Arkansas Judicial Discipline and Disability Comm'n*, 304 Ark. 244, 247, 801 S.W.2d 292 (1990). Based upon those principles of interpretation, we address the question whether there was any error in the actions of the Committee in following our rules as articulated in Section 11D.

In *Finch v. Neal*, 316 Ark. 530, 873 S.W.2d 519 (1994),[2] the respondent attorney requested "special findings" under Ark. R. Civ. P. 52. We stated:

---

[2] We note that *Finch, supra* was decided under the prior *Procedures of the Court Regulating Professional Conduct of Attorneys at Law*. Nevertheless, we cite it for the proposition that special findings are required by the Office for the purpose of our *de novo* review of these appeals.

> [U]nder the circumstances of this case, it would have been appropriate and most helpful for the Committee to have made findings as to Mr. Finch's conduct which was prejudicial to the administration of justice. By doing so, Mr. Finch would have understood the Committee's action and this court would have been in a better position to evaluate the Committee's findings in our *de novo* review.

*Id.*

At the hearing, the Panel announced that appellant would be cautioned with respect to Rule 1.5(a) of the Model Rules of Professional Conduct, which involves the reasonableness of fees, and subsection (B)(1) of the complaint, which alleges that the $5,750 paid by the client was not reasonable in light of the legal services performed.

The Office then prepared a draft of findings and conclusions that supported the Panel's findings. These findings were derived from the formal disciplinary complaint, exhibits, testimony, and depositions presented to the Panel during the course of its public hearing relating to appellant's alleged misconduct. The draft of proposed findings and order was sent to the Panel for review, and Chairman Newbern approved and signed the findings and order on behalf of the Committee.

■ Under *Finch, supra,* the Office has an obligation to include the findings of fact and conclusions of law that support the Panel's decision. Based upon the foregoing precedent and procedural rules governing the Committee and Office, as well as our *de novo* review of the record, we conclude that the Office did not exceed its authority in preparing a precedent for written findings and conclusions of law, and further we conclude that Chairman Newbern did not commit error in reviewing and adopting those written findings and conclusions of law in the order effectuating the ruling of the Committee.

In response to appellant's appeal, the Office further argues that appellant was required to abstract the entire record in this matter for purposes of a *de novo* appeal and that the abstract was deficient in that appellant only abstracted language from Chairman

Newbern during the proceedings on February 22, 2002, which consisted of two paragraphs.

Rule 4-2(a)(5) of the Rules of the Arkansas Supreme Court and Court of Appeals governs the sufficiency of abstracts. The rule provides in pertinent part:

> The appellant's abstract or abridgment of the transcript should consist of an impartial condensation, without comment or emphasis, of only such material parts of the testimony of the witnesses and colloquies between the court and counsel and other parties as are necessary to an understanding of all questions presented to the Court for decision.

Ark. Sup. Ct. R. 4-2(a)(5) (2002).

In the present case, appellant failed to abstract, in any meaningful way, material parts of the testimony from the hearing that are necessary for a full understanding of the question presented on a *de novo* appeal. As a general rule, failure to abstract an item essential to an understanding of the appeal has traditionally been regarded as a fatal error, which has been held to be an adequate basis to affirm for noncompliance with the abstracting rules. *See Porchia v. State*, 306 Ark. 443, 815 S.W.2d 926 (1991). However, pursuant to Ark. Sup. Ct. R. 4-2(b)(3) (2002), which was modified by *In Re: Modification of the Abstracting System*, 345 Ark. Appx. 626 (2001) (*per curiam*), the court now allows rebriefing before summarily affirming.

Here, according to the docket provided by our clerk, the Office did not file a motion requesting compliance with our abstracting rules to require rebriefing under Rule 4-2(b)(3). Rather, the Office cured any deficiency by including the pertinent testimony in its supplemental abstract. Ark. Sup. Ct. R. 4-2(b) (2002); *see also Bangs v. State*, 310 Ark. 235, 835 S.W.2d 294 (1992) (decision under prior rule). Because the supplemental abstract filed by the Office corrected any deficiency caused by appellant's failure to provide a sufficient abstract, the issue whether we should have required a sufficient abstract is moot.

The Office has filed a cross-appeal in this matter. For its first point on cross-appeal, the Office argues that Panel C erred

because it failed to impose restitution against appellant. For its second point on cross-appeal, the Office argues that Chairman Newbern, the chair of Panel C, erred by refusing to sign an order approving the petition for costs when a majority of the panel had apparently approved the petition.

■ In this cross-appeal, Section 18 governing restitution and costs provides:

> In addition to the Committee's authority set forth in Section 17 of these Procedures, a panel of the Committee in any case where a disciplinary sanction is imposed, *may*:
>
> A. Assess the respondent attorney the costs of the proceedings, including the costs of investigations, witness fees, service of process, depositions, and a court reporter's services;
>
> B. Impose a fine of not more than $25,000.00; and
>
> C. Order restitution to persons financially injured by the conduct.

*Id.* (emphasis added). We have said that the word *may* is usually employed as implying permissive or discretionary, rather than mandatory, action or conduct and is construed in a permissive sense. *Marcum v. Wengert*, 344 Ark. 153, 40 S.W.3d 230 (2001).

■ With regard to the issue of restitution, we hold that the Panel did not err in refusing to order restitution to the client. The Panel had the discretionary power to order restitution to the client under Section 18, and it chose not to do so. As the Office presented no evidence as to what would have been a reasonable fee, the Panel would have been required to engage in speculation as to the amount of restitution to be ordered. Because of the lack of evidence upon which to base the amount of restitution, we cannot say that the Panel abused its discretion in failing to order restitution.

We now turn to the Office's second point on cross-appeal concerning recovery of costs. On March 4, 2002, the Office detailed in its petition its costs in the sum of $274.71 that covered the costs of the investigation, witnesses' fees, service of process, court reporter's services, and costs of copies for the hearing. On March 22, 2002, Chairman Newbern denied the petition for costs, notwithstanding that a majority of the Panel had received and indicated approval of

the Office's petition. Chairman Newbern stated in a letter to Ms. Nancie Givens, acting chair of the Office:

> The first numbered paragraph of the petition, appearing above the costs list, states that the Committee imposed a sanction "for two violations of the Arkansas Rules of Professional Conduct." I have reviewed the "Findings and Order I signed in the matter, and it is clear to me that only one violation was found. At its conclusion, the "Findings and Order" states only one finding, i.e., that a fee charged by the respondent was unreasonable, thus Model Rule 1.5(a) was violated by the respondent. . . . While the erroneous recitation included in the petition copies, upon which the votes were marked, may or may not be prejudicial in the circumstances, I cannot allow the record to become encumbered by such a significant misstatement.

The Office contends that a majority vote of the Panel approved the petition for costs, and that the Chairman was bound by that majority vote. This contention lacks merit because the petition prepared by the Office and circulated to Panel members contained a significant and demonstrable misstatement of facts. After Chairman Newbern called this error to the attention of the Office, the Office failed to amend its petition to correctly reflect the facts in a revised petition to the Panel, but rather chose to stand upon its faulty petition and to challenge the action of the Panel by an appeal to this court.

We have no hesitancy in concluding that Chairman Newbern did not abuse his discretion in refusing to approve an order imposing costs when the petition for such costs was premised upon an inaccurate statement of the facts.

We affirm the action of the Committee.

CORBIN, J., not participating.

GLAZE and HANNAH, JJ., dissent.

TOM GLAZE, Justice, dissenting. This case involves issues of first impression and interpreting this court's new rules regulating and disciplining attorneys at law, and in my view, the court has seriously missed the purpose and intent of the court's

Code of Professional Conduct. It is necessary to flesh out the facts that the majority fails to mention.

Carolyn Russell is a 71-year-old woman living in Pine Bluff; her husband, George Russell, is 76. Mr. Russell suffered a stroke and was hospitalized in April of 2000. When it came time for Mr. Russell to be released, Mrs. Russell could not locate his doctor, Dr. Frigon, so she decided to contact an attorney to assist with obtaining her husband's release. Mrs. Russell hired appellant Robert Cortinez to secure her husband's release from the hospital; Cortinez charged Mrs. Russell an initial fee of $750.00 for his services. Cortinez contacted Dr. Frigon by phone, and followed up with a fax. A few days later, Mr. Russell was still in the hospital, but he had been moved to the "transitional living area." Cortinez informed Mrs. Russell that he would need an additional $5,000.00 to obtain Mr. Russell's release from the transitional living area. Mrs. Russell paid this additional amount. Cortinez later admitted that he did not know if he "sprung" Mr. Russell or if Mr. Russell's release would have happened "as a matter of course."

At a later date, Mrs. Russell came back to Cortinez's office to express her concerns about what would happen to the Russells' assets in the event Mr. Russell had to go into a nursing home. Cortinez suggested that one way of protecting their assets would be to create a trust, and Mrs. Russell then retained Cortinez to draft a trust instrument. Cortinez's fee for drafting the trust was $10,000; Mrs. Russell paid $3,000 up front, with $1,000 due per month until the entire $10,000 was paid. Cortinez informed Mrs. Russell that he could probably have the trust drafted within one month, but while drafts were circulated back and forth between Mrs. Russell and Cortinez, the trust was never completed. During the hearing before the Committee, Cortinez conceded that he "[did] not generally do trusts" as part of his practice.

In February of 2001, the Office of Professional Conduct received a grievance against Cortinez from Steve Jacobs, to whom Mrs. Russell had given a power of attorney. Based on the complaint, the Office began conducting an investigation. After interviewing Mrs. Russell and Mr. Jacobs, the Office determined that

sufficient grounds existed to support a formal complaint, and an affidavit was prepared based on statements Mrs. Russell made to Beau Pederson, the investigator for the Office. Mrs. Russell signed the affidavit and returned it to the Office, at which time the Office prepared a formal complaint based on that affidavit. Cortinez filed a timely response to the complaint on June 15, 2001.

The complaint, the exhibits, and Cortinez's response were sent to ballot-vote Panel A, which issued its findings and order. On October 23, 2001, Cortinez's attorney, Lynn Davis, deposed Mrs. Russell; a copy of this deposition was subsequently made a part of Cortinez's file and was made available to the ballot-vote Committee. Notice of Panel A's vote rulings were sent to Cortinez on November 27, 2001. The letter informed Cortinez that the Committee found Cortinez's conduct violated Rules 1.3, 1.4(a), and 1.5(a) of the Model Rules of Professional Conduct; the letter also stated that he was suspended for six months, and that he had to pay restitution in the amount of $7,500. On December 5, 2001, Lynn Davis sent a letter to the Committee informing it that Cortinez requested a public hearing.

A *de novo* public hearing was held on February 22, 2002, and under the court's new procedural rules, Panel C of the Committee on Professional Conduct was the presiding panel for this hearing. Panel C found that Cortinez violated Model Rule 1.5(a) when he charged Mrs. Russell $5,750 for obtaining the release of her husband from the hospital, stating that the fee was unreasonable in light of the amount of work performed. Panel C then issued a caution to Cortinez. Cortinez filed an objection to the Panel's Findings and Order, asserting that the order erroneously set forth the findings of the Committee. "In fact, the Office's selected excerpts from a selected deposition are misleading and not true," Cortinez wrote.

In conjunction with this case, the Office also submitted a petition for costs to Panel C, along with ballots to each committee member in an effort to recover the costs expended in the investigation and hearing of this case, totaling $274.71. Four of Panel C's members returned ballots approving the petition for costs.

The Panel Chair, however, refused to sign an order for costs because of an error in the petition; the petition alleged that two violations had been found, when in fact there had been only one.[1]

Although Panel C imposed only a caution for Cortinez's having violated Model Rule 1.5(a), it was Cortinez who filed a notice of appeal on April 10, 2002, regarding the issue of whether the findings set forth by the Office were contrary to the findings made by the Committee. The Office of Professional Conduct filed a notice of cross-appeal in this case on April 11, 2002; its appeal concerns the Panel's sanctioning Cortinez with only a caution, its failure to order restitution, and the Panel Chair's refusal to sign an order approving the petition for costs.

In this appeal, the majority opinion affirms Panel C's refusal to order restitution. I strongly disagree and would reverse the Panel's decisions as being clearly erroneous. First, I point out that Panel C found that Cortinez's $5,750 fee was unreasonable in light of the amount of work performed; even so, the Panel failed either to order Cortinez to return any fees to Mrs. Russell or to fine him for his violation of the Rules. Nor did Panel C consider returning any unearned fees in Cortinez's failed attempt to complete an appropriate trust.[2]

The majority opinion affirms Panel C's decision, in part, because the Office presented no evidence as to what would have been a reasonable fee; because of the lack of evidence upon which to base the amount of restitution, the majority simply concluded that it could not say Panel C abused its discretion in failing to order restitution. This matter is a *de novo* appeal, and in my view, Panel C was clearly erroneous. How can this court approve that Panel's decision finding that Cortinez charged an unreasonable

---

[1] While my main concern does not bear on this mistake in the petition, I note that the Office should have corrected this error instead of appealing what appears to be a scrivener's error.

[2] In contrast, Panel A, the original panel to consider and cast ballot votes in this matter, suspended Cortinez's license to practice law for six months and ordered him to pay restitution in the amount of $7,500. It is correct that we review only Panel C's decision, under Section 11A of the Procedures of the Court Regulating Professional Conduct of Attorneys at Law. However, the results of Panel A's consideration of this case are in the record before this court.

fee, but then not order restitution of the amount he received unlawfully? At the very least, this court should remand this case for a hearing to determine what would constitute a reasonable fee and to calculate the amount necessary to compensate Mrs. Russell. To allow Cortinez to retain the Russells' monies, even though Cortinez concedes he charged them an unreasonable fee, effectively rewards him for having violated Rule 1.5 of the Code. This makes no sense to me, and I feel confident that such beneficial treatment given an attorney in these circumstances was not contemplated by this court when it adopted its rules.

In addition, it is unclear whether Panel C took into consideration the fact that Cortinez had taken a substantial sum of money from Mrs. Russell — at least $4000 — to prepare a trust agreement that was never completed. The record is clear that Cortinez has not offered to return any of the $5,570.00 fee paid by Mrs. Russell, even though it is obvious from the record that Cortinez did little to get Mr. Russell released from the hospital, nor was it shown that his efforts had anything to do with Mr. Russell's release.

Cortinez's action in initiating this appeal reflects that he fails to see he has done anything wrong in this matter. To permit Cortinez to walk away from this proceeding with nothing more than a caution amounts to little more than a slap on the wrist, despite his essential conversion of these funds. The sanction imposed by Panel C is clearly erroneous, and our court, in this *de novo* review, should enter an appropriate sanction, restitution, and fine, or remand the case to the Panel to impose sanctions. Today's decision sends the wrong message to the members of the bar, as well as the public who engage attorneys for their services — clients beware, because if you are overreached by an attorney who violates the State's ethical standards, do not expect assistance from the Professional Conduct Committee. I respectfully dissent.

HANNAH, J., joins this opinion.

CORBIN, J., not participating.