2010 Ark. 223

**Stark LIGON, Executive Director, Supreme Court Committee on Professional Conduct, Appellant,**

v.

**Frank David REES, Ark. Bar No. 79238, Appellee.**

**No. 09–555.**

Supreme Court of Arkansas.

May 13, 2010.

Stark Ligon, Office of Professional Conduct, Little Rock, for appellant.

Friday, Eldredge & Clark, LLP, Little Rock, by: Donald H. Bacon and Martin A. Kasten, and Asa Hutchinson Law Group, PLC, Rogers, by: Asa Hutchinson and Asa Hutchinson, III, Little Rock, for appellee/cross-appellant.

JIM GUNTER, Justice.

■ ₁Appellant Stark Ligon, the Executive Director of the Office of Professional Conduct (OPC), appeals the order of the Supreme Court Committee on Professional Conduct (the Committee) finding that David Rees violated Rules 1.2(d) and 8.4(c) of the Rules of Professional Conduct (the Rules).[1] This appeal is one of four involving David Rees, submitted to this court for decision and handed down this same day. *See Ligon v. Rees,* 364 S.W.3d 28, No. 09–556; *Ligon v. Rees,* 364 S.W.3d 7, No. 09–559; *Ligon v. Rees,* 364 S.W.3d 1, No. 09–

560. On appeal in this case, appellant argues ₂that the Committee erred in (1) not implementing a more substantial and appropriate sanction for Rees's misconduct, (2) failing to make findings on two alleged rule violations, and (3) finding no violation of Rule 1.5(a) in Count C.1 of the complaint. Appellee David Rees cross-appeals and argues that the Committee erred in not granting his motion to dismiss for failing to prosecute in a timely manner. Because this appeal involves the discipline of attorneys, this court has jurisdiction under Ark. Sup.Ct. R. 1–2(a)(5). We affirm on direct appeal and cross-appeal.

On November 14, 2006, appellee was notified by mail that a complaint had been filed against him with the OPC in the name of a former client, Johnny Lee Ford. According to the complaint, appellee had represented Ford in 1995 on a murder charge that was tried to a jury twice and resulted in a hung jury both times. Appellee's fee for this representation was $25,000, of which Ford only paid him $5,000. On March 6, 1999, Ford was injured in an automobile accident, and appellee agreed to represent him on a 40% contingency-fee basis. On April 23, 1999, appellee filed suit on behalf of Ford against Donald Jones and his minor son, who was driving the vehicle that struck Ford's backhoe, and Farm Bureau made a policy-limits offer of $100,000 to settle the case. The defendant's attorney, Bill Bristow, also told appellee that his client could give appellee another $25,000. Appellee encouraged Ford to go along with a scheme against his medical creditors, in which the creditors would only be told about the $100,000 recovery. Appellee and the Fords signed an undated "settle-

---

1. All references to the Rules herein refer to the rules in effect in 2003, as an attorney can only be charged with violating a rule that was in effect at the time of the alleged misconduct.

*Sexton v. Supreme Court Comm. on Prof'l Conduct,* 295 Ark. 141, 747 S.W.2d 94 (1988). We note that the 2003 versions of Rules 1.2(d) and 8.4(c) are identical to the 2009 versions.

ment sheet" based on $100,000 in April 1999. The settlement showed appellee taking a fee of 33%, instead of 40%, and also showed appellee recovering additional fees, specifically the $20,000 from the earlier criminal case and $1500 from a custody case. Under this arrangement, the total percentage of fees that would be taken by appellee was actually 55%, which the complaint alleged was clearly unreasonable.

While appellee was representing Ford, Ford also consulted with another attorney, Kent Rubens. Ford ultimately terminated appellee's representation, and Rubens became Ford's attorney in the automobile-accident suit. Rubens amended the complaint to add the passenger in the car with Jones as a defendant on a joint-venture allegation. Rubens eventually negotiated a $200,000 settlement and gave appellee notice of the settlement and a hearing on September 19, 2003, at which he could pursue an attorney's fee lien claim. Appellee's claim was for a fee lien of $32,000, but after the court found that he had no statutory fee lien on Ford's recovery but could pursue a *quantum meruit* claim, appellee dropped all claims to a fee on the Ford case and agreed not to appeal.

The complaint alleged violations of the following Model Rules of Professional Conduct: Rule 1.1, which requires a lawyer to provide competent representation to a client; Rule 1.2(d), which provides that a lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent; Rule 1.5(a), which requires a lawyer's fee to be reasonable; Rule 4.4, which requires that, in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person; and Rule 8.4(c), which requires that a lawyer not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The OPC also sought costs for the investigation and hearing of the proceedings in this case, fines, and restitution.

Appellee filed a response on March 19, 2007, in which he denied any wrongdoing under the Professional Rules of Conduct. After a proposed discipline by consent, which encompassed this complaint and three other complaints, was rejected by this court on May 8, 2008, the complaint was sent to the Committee on Professional Conduct–Panel A. Appellee was notified in a letter dated July 25, 2008, that the panel found that his conduct had violated the Rules of Professional Conduct. Appellee requested a de novo public hearing, pursuant to Section 10.D.3 of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law (the Procedures), on August 11, 2008. The Ford complaint, along with the three other complaints, were set for hearing on February 3–5, 2009.

On January 9, 2009, appellee filed a motion to dismiss the Ford complaint. Appellee argued that the OPC received the original complaint in this matter, filed by Kent Rubens, on or about December 9, 2003, but waited three years before filing a complaint against appellee in December 2006. Appellee argued that this delay was not justified, was prejudicial, and rendered him incapable of adequately defending himself against the charges, most notably because Rubens died in 2008, so appellee contended that he had no chance to depose or cross-examine him. Rubens was also in possession of original tape recordings between appellee and Ford, which is part of the evidence offered against appellee, and appellee intended to question Rubens regarding the authenticity, accuracy, and chain of custody of the recordings. Appellant responded on January 12, 2009, arguing that appellee had waived these arguments by not previously moving to

dismiss in response to the complaint. Appellant also argued that appellee had failed to demonstrate any difficulty in preparing a defense and thus failed to show that any delay was prejudicial. At a prehearing conference held on January 13, 2009, the panel chairman announced that the motion would be denied "because there is no statute of limitations." There was also some discussion of whether the Committee would announce sanctions after deliberating each case separately or would wait until all four cases had been deliberated before imposing sanctions. The chairman stated that, although it seemed logical to wait until all the cases were over to impose sanctions, it appeared that the rules required the Committee to make the sanctions decision after each case. So, unless the parties agreed otherwise, sanctions would be imposed after each case was decided. On January 23, 2009, an order was entered consolidating these rulings made in the prehearing conference.

The public hearing on the four complaints began on February 3, 2009, and the Ford complaint was the first to be heard. After hearing testimony from numerous witnesses and closing arguments from counsel, the Committee took the complaint under advisement and stated that it would reconvene in the morning to announce a decision. The next morning, February 4, 2009, it was announced that every decision was unanimous among the panelists, and that the panel had found violations only of Rules 1.2(d) and 8.4(c). The Committee also announced that it was accepting appellee's motion that the Committee not look at sanctions until after the conclusion of all four of the cases. On February 5, 2009, after all four cases had been heard, the Committee announced that the sanction in the Ford case would be a six-week suspension plus costs.

A written order was entered on February 23, 2009, in which the Committee explained that, while appellee had testified at the hearing that the purpose of the settlement sheet was to show Ford how a settlement worked, "the evidence is conclusive that the purpose of preparing the settlement sheet was to show Mr. Ford's medical creditors, who had approximately $117,000 in liens, that only $100,000 was available for the settlement." Thus, the Committee found that appellee had violated Rules 1.2(d) and 8.4(c), in that he advised Ford to go along with a scheme he devised by which the medical-lien claimants would be told that only $100,000 was recovered in his suit. The Committee found no violations of Rules 1.1, 1.5(a), or 4.4. The Committee ordered that appellee's law license be suspended for forty-two days, effective on the date the order was filed with the Clerk of the Arkansas Supreme Court. Appellee was also ordered to pay $1,022.82 in costs for the hearing. On March 16, 2009, the OPC filed a notice of appeal, and on March 26, 2009, appellee filed a notice of cross-appeal.

 Our standard of review when reviewing decisions of the Arkansas Committee on Professional Conduct is de novo review on the record, and we affirm the Committee's actions and findings unless they are clearly erroneous. *Gillaspie v. Ligon*, 357 Ark. 50, 160 S.W.3d 332 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007). Due deference is given to the Committee's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Stilley v. Supreme Court Comm. on*

*Prof'l Conduct,* 370 Ark. 294, 259 S.W.3d 395 (2007).

For his first point on appeal, appellant asserts that the forty-two-day suspension imposed by the Committee was not appropriately or proportionately substantial or severe. Much of appellant's argument on this point consists of short summaries of ten other attorney disciplinary actions, including one from Oklahoma, to use as a comparison. These ten other cases, in which the attorney received a more severe punishment than appellee did in the present case, involved various levels of serious misconduct and, in most cases, also involved a larger number of violations. Appellant also asks this court to consider several "aggravating factors," including (1) an alleged conversation between appellee and Ford, in which appellee stated he was going to "kick his [Ford's] ass," and (2) the possible impropriety of conversations between appellee and Judge Burnett about the judge's possible employment with him after he retired.

In response, appellee argues that we should reject appellant's suggestion that we compare the sanction in this case to sanctions in other cases and should instead focus on the facts of the present case. Appellee also notes case law in which this court rejected such use of comparison in attorney-discipline cases. In *Colvin v. Comm. on Prof'l Conduct,* 309 Ark. 592, 832 S.W.2d 246 (1992), this court stated

Appellant recognizes that, upon a finding of a violation of the Model Rules, the Committee may suspend him. He alternatively argues that, even if the Committee's decision that he violated the rule is affirmed, it should be modified to conform to precedents established by the Committee. Without authority or convincing argument he asserts that the sanctions made public and published "in the larger state newspapers and the Ar-

kansas Bar Journal" should be considered as precedent and applied to this case. The argument is without merit for a number of reasons. First, there is reason to question the validity of appellant's statistics used in his argument because he uses statistics compiled from only August through October of 1989. Second, subject to certain exceptions, confidentiality of all communications, complaints, formal complaints, testimony, and evidence based upon a complaint is absolutely privileged. As a result, the facts of each Committee decision made public are not revealed or made known to this court for any consideration or determination of precedential value. Third, even if the statistics were valid, we have stated in the context of criminal law that we will not reduce or compare sentences that are imposed within statutory limits. In the civil context of damages awards, a comparison of awards made in other cases cannot be relied on as a measure of excessiveness. Thus, we reject the argument.

*Id.* at 594–95, 832 S.W.2d at 247–48 (internal citations omitted). *See also Clark v. Supreme Court Comm. on Prof'l Conduct,* 320 Ark. 597, 898 S.W.2d 446 (1995) (rejecting appellant's argument that punishment was excessive and stating that when the Committee's action was within the range of sanctions for a violation of a provision of the Model Rules, we affirmed the Committee's decision). Appellee contends that, under the facts and circumstances of this case, the sanction imposed was adequate. And finally, appellee argues that appellant requested no consideration of the "aggravating factors" below and should be barred from doing so on appeal.

Section 17(E)(2) of the Procedures provides that when the Committee finds that an attorney has violated any provision of

the Rules, the Committee is authorized to suspend the attorney for a period up to but not exceeding five years. We find that appellant has failed to demonstrate that the Committee's action of imposing a six-week sanction in this case was clearly erroneous, and pursuant to *Colvin, supra,* we reject appellant's suggestion to compare this sanction with sanctions imposed in other cases. We therefore affirm the sanction imposed by the Committee as it is within the range of sanctions authorized for a violation of a provision of the Rules. *See Clark, supra.*

■ On his second point on appeal, appellant argues that eight separate counts were contained in the complaint, but the Committee only announced decisions on five of those counts. This is factually incorrect; appellant claims there is no decision on Count C.2, but the Committee clearly announced on page four of its order that it found no violation as alleged in Count C.2. Appellant is correct, however, that there was no announced decision on Counts B.2 and E.2. The Committee decided that, having found a violation of Rule 1.2(d) in Count B.1, it would not vote separately on Count B.2, and having found a violation of Rule 8.4(c) in Count E.1, it would not vote separately on Count E.2. Count B.2 alleged a violation of Rule 1.2(d) in that appellee attempted to set up a settlement on the basis of a total recovery of $100,000 for Ford in which appellee's nonlien claims would receive preference over the general medical creditors; Count E.2 alleged a violation of Rule 8.4(c) in that appellee engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation when he attempted to set up such a settlement. Appellant suggests that, on this court's de novo review, we should find that the above counts were proven and impose further sanctions accordingly.

In response, appellee argues that appellant failed to obtain rulings on the above counts, so the argument is not preserved for our review. *See Wilson v. Neal,* 332 Ark. 148, 964 S.W.2d 199 (1998) (refusing to address appellant's arguments on appeal because he did not raise them below or seek a ruling from the court in a disbarment action). After the Committee had announced its findings, appellant did not request a ruling on the above counts, inquire as to why no ruling was made, or file a motion to modify the findings or otherwise obtain a ruling. We agree with appellee that we have no ruling on this argument and, thus, find that it is not preserved for appellate review. We also note that, as appellant himself has recognized, there is no requirement in the Procedures that the Committee issue a ruling on each and every count in the complaint.

■ For his final point on appeal, appellant takes issue with the Committee's ruling that there was no violation of Rule 1.5(a), which requires a lawyer's fee to be reasonable. Appellant argues that, by charging nonrelated fees of $20,000 and $1500 in the proposed settlement agreement of Ford's personal-injury suit, appellee was "improperly making his law firm a preferred creditor of Ford over the rights and financial interests of medical providers who had cared for Ford in his 1999 injury." The fact that appellee "lowered" his fee claim to $32,000 after the case had settled "clearly" shows that his attempt to get the nonrelated fees was inappropriate and excessive under Rule 1.5(a).

In response, appellee notes that the actual sum of fees collected for all of his representations of Ford were minimal: $5,000 for two murder trials and no fee at all for his work on the personal-injury case. Appellee also points to witness testimony that stated that the fees charged were reasonable and somewhat low in

some cases. Appellee also argues that appellant seems to be mixing his allegations of misconduct. Appellant argues a violation of Rule 1.5(a) based on the alleged attempt to defraud a lienholder, but whether a fee is unreasonable under the rule is a determination made regarding the attorney's conduct toward the client, irrespective of the interests of third parties.

Considering the deference given to the Committee's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony, *Stilley, supra,* coupled with the fact that appellee ultimately collected very little in fees from Ford, we find that appellant has failed to show that the Committee's decision on this point was clearly erroneous. Thus, we affirm on this point.

On cross-appeal, appellee argues that it was error for the Committee to deny his motion to dismiss. Appellee acknowledges there is no statute of limitations for violations of the rules of professional conduct, but argues that where an accused suffers from prejudice from a prosecutorial delay, the action should be dismissed. Appellee bases this argument on criminal law, and specifically cites *Scott v. State,* 263 Ark. 669, 566 S.W.2d 737 (1978), in which this court stated

> Apparently the court and the prosecutor assumed that because there is no statute of limitations for murder, charges can be filed at any time.... Just because the statute of limitations does not run on a murder charge does not mean that a person can be brought to trial at any time. The prosecution cannot delay simply for the purpose of gaining a tactical advantage over the accused.

*Id.* at 673–74, 566 S.W.2d at 740 (internal citations omitted). This court stated that if it could not be shown that the State had good cause for its delay in filing charges, then the charges should be dismissed, and we remanded to give the State an opportunity to explain the delay.

Appellee argues that his case parallels the *Scott* case. Appellant was first notified of appellee's alleged violations in December 2003, via a letter from Kent Rubens[2], but the complaint was not filed until December 2006. Appellee contends that such a delay was unjustified and unduly prejudiced him. Appellant offers no explanation for the delay, and appellee was substantially prejudiced, most notably because Rubens died in November 2008, and appellee was therefore unable to cross-examine him at the hearing on these charges. Appellee argues that the delay significantly interfered with his ability to defend himself.

In response, appellant first asserts that appellee's cross-appeal is moot because appellee has already served his suspension and paid the costs imposed on him by the Committee's order. With regard to the three-year delay in filing the complaint, appellant cites generally to the "substantial" demands on the "time, limited staff, and resources of the Office of Professional Conduct." And, other than the Rubens matter, appellant claims that appellee makes no specific allegation of any actual prejudice. Appellant also notes that appellee requested a public hearing in this matter on August 11, 2008, and Rubens did not pass away until November 2008. Appellant argues that appellee could have deposed Rubens within that period of time, in preparation for the hearing, but he did not do so. Appellant also asserts that the Rubens material is mostly opinion, and the substantive factual matters set out by

---

2. This original 2003 letter is not a part of the record; however, Rubens references this letter in his 2006 affidavit, which is part of the record.

Rubens were verified by other proof in the record.

In reply, appellee argues that appellant has still not provided a satisfactory explanation for the delay and suggests that, by timing the filing with the three other complaints, it may have been a tactic to increase the likelihood of the finding of a violation by the Committee. Appellee also reiterates that without the three-year delay, Rubens would have been required to testify before the Committee, and appellee would have had the chance to cross-examine him regarding several important matters, including (1) any bias Rubens had against appellee and (2) why Rubens told Ford to tape-record his conversations with appellee. Finally, appellee contends that his cross-appeal is not moot, because whether there was a valid sanction imposed in this case will affect the outcome of other cases, as a lawyer's prior disciplinary record can be considered when sanctions are imposed. Appellee also notes that any finding of an ethical violation is a permanent blemish on an attorney's record, both in the eyes of the court and the professional community.

We agree with appellee that the cross-appeal is not moot. We also find that appellee has failed to demonstrate that the Committee's denial of his motion to dismiss was clearly erroneous, and specifically, that appellee failed to show any prejudice in the delay to the extent that it was reversible error not to dismiss. Therefore, we affirm on this point.

Affirmed on direct appeal; affirmed on cross-appeal.

BROWN, J., concurring.

I concur with the majority opinion in its entirety and write separately to urge the Committee on Professional Conduct to consider adopting formal guidelines on the time period in which a formal complaint should be lodged and an attorney notified when an allegation of professional misconduct has been made against him or her. In this particular case, the time between the original complaint and the making of a formal allegation by the Committee was more than three years. Admittedly, there may be a reasonable explanation for such a delay in some cases. But the delay seemed largely unexplained in this case.

According to the American Bar Association, as of 2007, the most recent year for which data is available, twelve states had adopted such guidelines.[1] American Bar Association Center for Professional Responsibility, 2007 SURVEY ON LAWYER DISCIPLINE SYSTEMS, CHART V: CASE PROCESSING TIMES. In my view, the Committee should examine what other states have done and consider promulgating formal time-processing standards. Without question, in some instances, an unreasonable delay in bringing a formal complaint can prejudice the ability of a lawyer to mount a defense to the allegation.

BROWN, J., concurs.

1. The states with formally-adopted time standards are Alaska, Arizona, California, Louisiana, Maryland, Nevada, North Dakota, Ohio, Oregon, Pennsylvania, Texas, and Wisconsin.