Herbert HOGG, d/b/a Jo-Cal Oil Company *v.* Tommy
Lynn JERRY, et al.

89-119                                          773 S.W.2d 84

Supreme Court of Arkansas
Opinion delivered June 26, 1989

284

*Bramblett & Pratt*, by: *James M. Pratt, Jr.*, for appellant.

*Spencer, Spencer, Depper & Guthrie*, by: *J.V. Spencer III*;

and *Knobles & Klingemann, Inc.*, for appellee.

STEELE HAYS, Justice. In 1983 Herbert Hogg, an independent oil producer, purchased an oil lease in the Lawson Field of Union County. As lessee, Hogg acquired a 75 % working interest[1] in any oil production from this property. Hogg sold one half of the lease to Nolan Haines and, in order to raise money for drilling, sold fractional interests to the appellees.

Appellee Tommy Lynn Jerry, an employee of Lion Oil Refinery, bought 2.5 % of Hogg's 75 % interest, as did appellee Wayne Blackmon, a poultry farmer. Additionally, Hogg sold appellees Randy George and Alan Powers, gas pipeline salesmen, each 5 % of the working interest. Dr. Chester Spencer, an orthodontist and former petroleum engineer, also an appellee, purchased 10 % of Hogg's working interest. Under the terms of the purchase, each of the appellees was required to pay their proportionate share of the drilling and completion costs of the wells. Hogg retained 12.5 % of the working interest but was responsible for none of the drilling costs, in lieu of his time, expertise and management skills. Nolan Haines received 12.5 % of the working interest and paid none of the drilling costs.

Stanley #2, the first well drilled produced oil, although at a declining rate. The second well, Stanley #3, produced no oil and was converted into a salt water disposal well. The third well, Hill A-1, produced no oil at the Travis Peak formation. In the written agreement with the appellees, Hogg and Haines reserved the Meakin formation of Hill A-1, a formation lying above the Travis Peak, and subsequently, drilled an oil producing well at this level.

The Jo-Cal Oil Company, a Hogg family partnership, operates and manages Herbert Hogg's oil properties. Disagreements developed between Hogg and the appellees relating to Hogg's operations and drilling decisions. The appellees eventually stopped paying their operating bills. Hogg, under the name of Jo-Cal Oil Company, filed suit to recover monies claimed to be due from the appellees. The appellees counterclaimed, seeking

---

[1] A working interest is the operating interest under an oil and gas lease. The owner of the working interest has the exclusive right to exploit the minerals on the land. Williams & Meyers, *Oil and Gas Terms* (1987).

rescission and money damages for violation of the Arkansas Securities Act, namely, the sale of unregistered and nonexempt securities. Appellees, George, Powers, and Spencer counterclaimed against Hogg, individually and as a general partner of Jo-Cal, and against Nolan Haines and Jo Ellen Hogg and Amy Kassos, as general partners of Jo-Cal Oil Company.

The chancery court held that Hogg was liable to appellees Jerry, Blackmon, Spencer, George, and Powers and granted recision of their contracts, directing Hogg to repay the appellees their investment plus interest and attorney's fees. Nolan Haines was held jointly and severally liable to appellee Spencer but not to appellees Powers and George. Jo Ellen Hogg, Amy Kassos and the Jo-Cal Oil Company were not found to be liable to any appellee. Appellant Hogg's appeal arises from these rulings. Additionally, Spencer, George, and Powers filed a cross-appeal against Hogg and Haines, and against Jo-Cal and its general partners. On cross-appeal, George and Powers contend that Nolan Haines should be deemed jointly and severally liable to them. Having considered the arguments, we affirm on appeal and cross-appeal.

I

The Chancery Court Did Not Err in Granting the Appellees Rescission of Their Contracts and Awarding Damages Pursuant to the Arkansas Securities Act.

It is unlawful to offer or to sell any security in this state unless it is registered under the Arkansas Securities Act or exempted from registration. Ark. Code Ann. § 23-42-501 (1987). The sale of a fractional percentage of a "working interest" in an oil lease constitutes the sale of a security. Ark. Code Ann. § 23-42-102 (13) (Supp. 1987); McMullan v. Molnard, 24 Ark. App. 126, 749 S.W.2d 352 (1988). Civil liability attaches to a seller of unregistered securities and the purchaser of the unregistered securities may sue either at law or in equity to recover the consideration paid for the security, together with any interest at 6% from the date of payment, and costs and reasonable attorneys' fees, less the amount of any income received on the security. Ark. Code Ann. § 23-42-106 (1987).

The parties stipulated that Hogg neither registered nor

filed proof of exemption with the securities commissioner regarding the working interests in the oil wells sold to the appellees. Hogg states that he had no knowledge of the securities law, yet "ignorance of a duty to register securities, or to procure their exemption, can in no way excuse the failure to do so." *Robinson* v. *White*, 635 F. Supp. 851 (W.D. Ark. 1986). Therefore, a clear violation of the Arkansas Securities Act occurred. Appellant Hogg relies on the affirmative defenses of laches and estoppel to bar the appellees' recision of their contracts.

Hogg cites *Schultz* v. *Rector Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977), supporting his estoppel argument. Although this court based its findings upon the theory of estoppel and laches, the facts of *Schultz* bear little resemblance to the facts here. The plaintiffs in *Schultz* were both licensed stockbrokers and served as vice-presidents of Stephens, Inc. These men invested in an apartment complex project primarily as a tax shelter. Not until the IRS disallowed a substantial portion of the plaintiffs' claimed deductions on their tax returns, did the plaintiffs seek recision of their joint venture purchases asserting that the sale of these interests constituted the sale of unregistered securities. After taking personal income tax deductions and enjoying the benefits of such deductions, the plaintiffs sought a refund of the purchase price because of noncompliance with registration requirements of the Arkansas Securities Act.

Here, unlike *Schultz*, the only investor who maintained any knowledge of investments, particularly oil and gas investments, was Spencer. Jerry worked in an asphalt plant and had no previous experience with investments. Likewise, Blackmon, a poultry farmer, had no prior experience in oil and gas investments. Both George and Powers were oil and gas pipeline salesmen, but neither had invested previously in oil and gas ventures, nor did either know anything about petroleum geology.

This court in *Schultz* expressly limited its holding as to the finding of estoppel and laches:

> In making this finding of estoppel and laches we are not in any way opening the door to schemes of promoters of unregistered and nonexempt securities whereby they can trap investors into waiving their rights by receiving dividends or taking tax benefits from their investments.

> Rather, it should be emphasized that *these findings are made solely on the basis of the particular circumstances presented by this case.* [Our emphasis.]

The particular circumstances referred to in the opinion certainly included the sophisticated background of the purchasers as well as their extensive knowledge of the investment field.

■■ The question of whether the conduct of the purchaser is sufficient to bar the rescission of the sale depends upon the facts in each case. Some of the determinative factors in securities registration cases include (1) participation in the organization and management of the corporation, (2) acceptance of dividends by the buyer, (3) the buyer's knowledge of the violation at the time of the sale, (4) the reliance of the seller on the buyer's conduct, and (5) the experience and sophistication of the buyer. Note, *A Definition of Investment Contracts and Equitable Defenses to Suit for Recision for Non-Registration under the Arkansas Securities Act,* 1 UALR L.J. 366 (1978). In this case the appellees satisfy none of the factors listed above, except for having received some marginal return on their investment.

■ In addition to the estoppel argument, appellant Hogg relies on the doctrine of laches. Hogg contends that the appellees waited an unreasonable period of time before attempting to rescind the sale. But laches involves more than mere delay in pursuing a remedy; the delay must be such that it works a disadvantage to another. 2 Pomeroy, *Equity Jurisprudence* 419 (5th Ed. 1941).

Appellee Spencer became concerned over Hogg's operations when Stanley #3 was converted into a salt water disposal well. The appellees continued to receive expense statements from Stanley #3, but received no compensation for the water disposed of in this well. Appellee Spencer alerted the other investors and wrote Hogg a letter demanding information on August 20, 1984. After an attempt to settle these differences failed, appellees Spencer, George, and Powers retained legal counsel in Texas in March, 1985, and filed suit for recision in August, 1985. The Arkansas Chancery Court enjoined these appellees from proceeding in Texas on September 12, 1986, and they filed their counterclaim in Arkansas on December 3, 1986.

The remaining appellees filed a counterclaim against appellant Hogg on May 22, 1986. Only eight months elapsed from the initial suspicion of possible fraud [August, 1984] until legal counsel was retained, and three months later legal action commenced in Texas. No excessive delay occurred, and legal action occurred well within the five year statute of limitations. Ark. Code Ann. § 23-42-106(3)(f) (1987). no excessive delay in pursuing a remedy existed, and certainly Hogg and Haines were not disadvantaged by any delay, as they both continued to enjoy the benefits of their 12.5% interest on Stanley #2, and the 100% interest in Hill A-1 (a productive oil well drilled at the Meakin formation.) Therefore, we find the laches argument meritless.

## II

The Chancery Court Did Not Err in Finding Nolan Haines Jointly and Severally Liable for the Damages Awarded to Appellee Spencer.

Ark. Code Ann. § 23-42-106(c) (1987) defines those persons who may be jointly and severally liable to the purchaser in addition to the seller of the unregistered, nonexempt securities. The statute provides that a person who "controls" a seller of securities, as well as "partners," "officers," and "directors" may be jointly and severally liable with the seller, and such individuals need not be found to have materially aided in the sale. *Mitchell* v. *Beard*, 256 Ark. 926, 513 S.W.2d 905 (1974). Also persons who occupy a similar status to the partners, officers, or directors, or perform a similar function as the partners, officers, or directors, may also be liable to the purchaser. In addition, every "employee," "broker-dealer," or "agent" who "materially aids" in the sale is jointly and severally liable with and to the same extent as the seller.

The chancery court found that Nolan Haines materially aided and abetted Herbert Hogg in procuring the investment of Dr. Spencer. Nolan Haines' liability arises from his status as an agent of Hogg. An agent is "any individual . . . who represents an issuer in effecting or attempting to effect purchases or sales of securities." Ark. Code Ann. § 23-42-102(2) (Supp. 1987). Hogg qualifies as an "issuer" under the Arkansas Securities Act with respect to fractional undivided interests in oil, gas, or other

mineral rights. The term "issuer" means the owner of the right or of any whole or fractional interest in the right who creates fractional interests therein for the purpose of the offering. Ark. Code Ann. § 23-42-102(8)(D) (Supp. 1987).

Having found that Haines was an agent, we must now determine if his acts "materially aided" in the sale of the securities for liability to attach. In his deposition, Nolan Haines admits that he materially aided in the sale of the securities to Dr. Spencer. Haines represented an issuer (Hogg) in giving "Dr. Spencer materials which I received from Herbert Hogg." Moreover, Haines stated, "the only investor *I helped to get* was Dr. Spencer." The circumstances indicate that Nolan Haines and Dr. Spencer were "fast friends," and that Dr. Spencer trusted Nolan Haines. Experience suggests that as both Dr. Spencer and Nolan Haines lived in Grand Prairie, Texas, and as Hogg and Haines needed to obtain investors, that the actions of Haines in bringing a prospectus to Dr. Spencer's office, a former petroleum engineer and oil and gas investor, and promoting his participation in the venture, constituted "materially aiding" in the selling of securities to Dr. Spencer.

Recently, in *Quick* v. *Woody*, 295 Ark. 168, 747 S.W.2d 108 (1988), this court was faced with deciding if a person qualified as an agent under Ark. Code Ann. § 23-42-102(2) (1987), and if this agent then materially aided in the sale of securities. Although the actions of Haines are not as extensive as those in *Quick*, the circumstances of the two sales were quite different. Hazel Quick did not know her potential investors, nor do the facts indicate whether her potential investors had any experience in prior investments, as did Dr. Spencer. Hazel Quick's sales pitch was aimed toward a broad range of possible investors, whereas Haines was targeting a friend, knowledgeable about oil and gas investing.

The appellant relies on *Titan Oil and Gas* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974), a case interpreting the phrase "materially aids in the sale of securities." Titan Oil, the seller of securities, attempted to recover contribution from two of its representatives for aiding in the sale of unregistered securities. However, unlike the case at bar, the sales pitch by the various Titan representatives was not as directed or focused as the procurement of Dr. Spencer. Furthermore, in *Titan Oil* the court

noted that the determination of whether a representative materially aids a sale is one of fact, the resolution of which depends to some extent on the inferences drawn from the testimony, and the court could not say that the chancellor's findings were clearly erroneous. Such is the case before us.

## CROSS-APPEAL

## III

The Chancery Court Did Not Err in Finding Nolan Haines Was Not Jointly and Severally Liable to Appellees George and Powers.

The chancery court found that Nolan Haines was liable to appellee Spencer. The basis for the court's holding was that Haines acted as an agent for Hogg, and as an agent he "materially aided" in the sale by presenting the prospectus to Dr. Spencer and discussing the investment. However, Nolan Haines testified that he neither knew, met, nor communicated with appellees George and Powers. Under these circumstances it can hardly be said that Haines materially aided in the sale of securities to these two appellees.

The appellees argue that because the interests involved are fractional, undivided interests in an oil lease, that Haines, as one half owner with Hogg, necessarily becomes a seller of these fractional security interests by statutory definition. The Arkansas Securities Act fails to define a "seller" of securities. However, the act specifically defines an "issuer" of fractional interests in oil rights as *a person who owns* the right or of any whole or *fractional interest in the right, who creates fractional interests therein for the purpose of the offering.* Both Hogg and Haines own fractional interests in the oil lease.

However, only Hogg created additional fractional interests from his 75% working interest and offered these interests for sale. Therefore, only Hogg constitutes an issuer and seller of securities.

Alternatively, appellees George and Powers argue that Hogg and Haines were partners, and as a partner Haines becomes jointly and severally liable to them. In setting out the rules for determining the existence of a partnership, the Uniform

Partnership Act states that "part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of property . . ." Ark. Code Ann. § 4-42-202(2) (1987). Hogg and Haines deny the existence of a partnership and the evidence in the record fails to establish that a partnership existed. Failing to find that Haines was an agent who materially aided in selling the securities to George and Powers, and failing also to find that Haines and Hogg were partners, we affirm the chancellor.

## IV

The Chancery Court Properly Held That Neither the Jo-Cal Oil Company Nor its Partners Were Jointly and Severally Liable to Appellees Spencer, George, and Powers.

The appellees contend that the partnership of Jo-Cal Oil Company and its general partners should be jointly and severally liable to the appellees for the sale of the unregistered, nonexempt securities. Jo-Cal exists to manage and service oil wells. The appellees concede that Jo-Cal was not the actual seller of the securities in question. But, if Jo-Cal was not the seller of the securities, in order to be held jointly and severally liable to the purchasers, Jo-Cal must qualify as either (1) one who controls a seller, (2) a partner, officer, or director of the seller, (3) a person occupying a similar status as a partner, officer, or director, (4) a person performing a similar function as a partner, officer, or director, or (5) an employee who materially aided in the sale, (6) a broker-dealer who materially aided in the sale, or (7) an agent who materially aided in the sale.

The appellees argue that Jo-Cal materially aided in the sale of each investment, yet Jo-Cal meets neither the statutory definition of an employee, an agent, or a broker-dealer. In their reply brief, the appellees suggest that Jo-Cal occupied a status similar to a partner and upon that basis should be held jointly and severally liable to the appellees. The evidence in the record fails to prove that similarity, rather, testimony shows that Jo-Cal was the manager of Hogg's wells.

V
Petition for Attorney's Fees on Appeal

Ark. Code Ann. § 23-42-106(a)(1) (1987), provides for the recovery of *reasonable attorneys' fees* for the purchaser of unregistered, nonexempt securities. Appellees have requested an additional award for this appeal. We allow the sum of $2,000.

For the reasons stated, the decree is affirmed.