Don G. GILLASPIE *v.* Stark LIGON, Executive Director,
Committee on Professional Conduct

03-994                                                              160 S.W.3d 332

Supreme Court of Arkansas`
Opinion delivered April 22, 2004

[Rehearing denied May 20, 2004.*]

* GLAZE and IMBER, JJ., would grant rehearing.

Appellant, *pro se.*

*Stark Ligon* and *Michael D. Harmon*, for appellee.

ROBERT L. BROWN, Justice. This appeal is brought by Donny G. Gillaspie from an order of suspension from the practice of law by the Supreme Court Committee on Professional Conduct Panel B (Committee) and a second order denying his motion for reconsideration. We modify the order of suspension, as set forth in this opinion.

On January 24, 2003, Mr. Gillaspie filed a motion for belated appeal in a criminal case in this court on behalf of his client, Jason J. Gulley, in which he said: "Counsel for appellant admits that the untimely filing of the Notice of Appeal was his fault." We granted the motion for belated appeal in this criminal matter by *per curiam* opinion based on the admission of fault by Mr. Gillaspie and sent the opinion to the Supreme Court Committee on Professional Conduct for any action deemed appropriate.

On March 14, 2003, the Office of Professional Conduct (Office) sent a certified letter to Mr. Gillaspie which enclosed a formal complaint against him for violation of Model Rule 1.3 of the Arkansas Model Rules of Professional Conduct concerning reasonable diligence and promptness in representing a client and

Model Rule 8.4(d) of the same rules regarding conduct prejudicial to the administration of justice. The complaint stemmed from Mr. Gillaspie's failure to file a notice of appeal on behalf of his client, Jason J. Gulley. Attached to the complaint as exhibits were Mr. Gillaspie's motion for belated appeal admitting fault for the late appeal and this court's *per curiam* opinion.

The cover letter with the complaint advised Mr. Gillaspie that failure to respond to the complaint could "carry substantial adverse consequences and penalties." The letter further stated that in deciding the appropriate disciplinary sanction, the Committee may consider prior sanctions. A list of seven prior sanctions was attached, which included four reprimands, two warnings, and one referral to the Arkansas Lawyers Assistance Program (ARLAP). Mr. Gillaspie did not respond to the complaint.

On May 2, 2003, the Office wrote Mr. Gillaspie, again by certified mail, and enclosed a copy of the Committee's Findings and Order, dated that same day. The letter and order both stated that Mr. Gillaspie was suspended from the practice of law for three months and fined $50 for failing to file a timely notice of appeal in the criminal matter involving Jason J. Gulley. However, because of his failure to respond to the Office's formal complaint, Mr. Gillaspie's sanction was enhanced by the Committee, and he was suspended from the practice of law for an additional six months and fined $2,500. Mr. Gillaspie was advised of his right to a *de novo* public hearing on the matter before a different panel of the Arkansas Committee on Professional Conduct. On May 26, 2003, Mr. Gillaspie requested a public hearing and said:

> The proposed action, despite my admitted violations, is so drastic as to amount to an end of my professional career. I fail to understand the basis for the enhanced sanction for simply failing to respond to the allegation which I admitted to the Court in my application for the delayed appeal.

The Office responded to Mr. Gillaspie and stated that Mr. Gillaspie's failure to respond to the complaint actually was a violation of Section 9(C) of the Arkansas Supreme Court Procedures Regulating Professional Conduct of Attorneys at Law (Procedures) and constituted an admission of the factual allegations in the complaint and extinguished his right to a *de novo* hearing. The Office advised that Mr. Gillaspie could petition for rehearing.

On June 30, 2003, Mr. Gillaspie wrote the Office and said "to add a 6 month suspension and a $2,500 fine over and above for

simply not contesting an already admitted violation is, in truth, a disbarment!" He stated, in addition, that his violations were for filing late appeals and records which required "routine consideration by the Supreme Court." He agreed that he was late in the criminal appeal but, again, contested the failure-to-respond charge on a matter he had already admitted. He requested modification of the sanction to a thirty-day suspension, a $2,500 fine, a twenty-four month probation, and cooperation with ARLAP.

In his formal Petition for Reconsideration, Mr. Gillaspie again stated that he was at fault in not filing a timely appeal and that he considered the enhancement for failure to respond to the Office's complaint to be "drastic." He wrote:

> Respondent's only son and his oldest granddaughter were killed when their car was struck by a train and respondent subsequently was impaired by clinical depression for a number of years, for which he was diagnosed and received treatment. Those problems resulted in some prior disciplinary proceedings and respondent limiting his practice to criminal defense, to eliminate the paperwork involved in civil litigation. In the recent past respondent has suffered the effects of type II diabetes and high blood pressure, with a number of small strokes, and advancing effects of age affecting primarily his memory. Respondent remains competent and capable of handling pre-trial matters in criminal cases. Respondent tries about 1 or 2 major felony cases each month, typically representing about 40 felony defendants at a time.

On July 3, 2003, the Office replied to Mr. Gillaspie's petition. It said that Mr. Gillaspie's assertions did not rise to "compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond," as required by Section 9(C)(4)(a) of the Procedures for a petition for reconsideration when there has been a failure to respond. The Office added that Mr. Gillaspie's failure to respond to its complaint had been negligent or careless.

On September 2, 2003, the Committee entered an order denying Mr. Gillaspie's petition for reconsideration on the basis that he had not shown unavoidable circumstances sufficient to excuse his failure to respond. A notice of suspension by the Committee was filed that same date showing Mr. Gillaspie had been suspended for three months on the underlying charge of failure to file a criminal appeal in timely fashion and an additional six months for failure to respond to the Office's complaint.

Mr. Gillaspie appealed the orders of the Committee to this court, and we stayed the suspensions pending resolution of this appeal.

Mr. Gillaspie's issue on appeal essentially deals with the harshness of the Committee's sanction against him. He first contends with regard to missing the deadline for filing the criminal appeal and the three-month suspension that that offense coupled with his prior sanctions did not amount to "a pattern of similar misconduct" so as to constitute "serious misconduct" under Section 17B of the Procedures. He then urges that with regard to the additional six-month suspension, he had already admitted his fault in his motion before this court which this court referred to the Committee. To sanction him for failure to respond when he had formally admitted fault is "draconian," according to Mr. Gillaspie. This is certainly not "serious misconduct" to justify an additional suspension, he adds.

The Committee's position on appeal is that it found that Mr. Gillaspie had not demonstrated compelling and cogent evidence of unavoidable circumstances in failing to respond to the Office's complaint and that this decision was not clearly erroneous. Moreover, the Committee emphasizes that Mr. Gillaspie had been previously advised that his failure to respond would have adverse consequences.

Our standard of review when receiving decisions of the Arkansas Committee on Professional Conduct is *de novo* review on the record, and we affirm the Committee's action and findings unless they are clearly erroneous. *Fink v. Neal*, 328 Ark. 646, 945 S.W.2d 916 (1997). We disagree with Mr. Gillaspie that a three-month suspension from the practice of law based on his untimely notice of appeal in the criminal matter, when viewed in connection with his prior disciplinary matters, did not exhibit a pattern of misconduct, and, therefore, serious misconduct under Section 17B of the Procedures. We, accordingly, affirm the three-month suspension and the award of $50 in costs.

We disagree with the Committee, however, on the sanction for failure to respond to the Committee's complaint. We see no reason for Mr. Gillaspie to file a second document stating: "I admit that the untimely filing of the Notice of Appeal is my fault," when the Committee had already attached to the Office's complaint Mr. Gillaspie's motion for belated appeal stating: "Counsel for appellant admits that the untimely filing of the Notice of Appeal was his

fault." In short, the Office already had Mr. Gillaspie's response and admission of fault on file. In fact, it was the basis for the Office's complaint.

■ Because of these facts, we deem it unnecessary for Mr. Gillaspie to assert "unavoidable circumstances" for failure to respond pursuant to Section 9(C)(4)(a) of the Procedures, since his formal admission of fault was already on file. All that was at issue in this case was the penalty to be assessed against him. Accordingly, we address the merits of the additional sanction of the six-month suspension and the $2,500 fine.

■ As an initial point, we conclude that an additional six-month suspension as an enhancement for failure to respond is not "serious misconduct" under Section 17B. Only serious misconduct can be the basis for restricting the practice of law. Mr. Gillaspie admits, however, in his petition for reconsideration that he suffered from clinical depression following the deaths of his son and granddaughter in a train accident. That, no doubt, was the reason the Arkansas Committee on Professional Conduct referred him to the ARLAP, which he did not attend. His disciplinaries for the most part, it appears, have been due to late appeals and briefs in criminal matters.

■ Rather than adding six months to his suspension time for failing to respond to the complaint, we direct the Committee to mandate Mr. Gillaspie's entry into the Arkansas Lawyers Assistance Program for a period of at least nine months as part of the sanction for failing to file the criminal appeal in timely fashion and his prior disciplinary record. This means that Mr. Gillaspie will be suspended from the practice of law for three months, beginning at the time the mandate in this case is issued. There will also be the simultaneously referral to ARLAP for a period of nine months or more. Based on the progress reports from ARLAP, the Committee can determine what additional action needs to be taken. Clearly, if Mr. Gillaspie refuses to participate in ARLAP or is deemed unfit to practice law, the Committee can take additional action. That decision will rest with the Committee.

In sum, we affirm the Committee and suspend Mr. Gillaspie from the practice of law for three months because of his missed criminal appeal and because of his prior disciplinary record. We reverse the additional sanction of a six-month suspension from the law practice and the fine of $2,500 for failure to respond to the

Office's complaint. We direct that Mr. Gillaspie commence participation in ARLAP, beginning on the date the mandate is issued. His participation shall extend for a period of at least nine months.

Affirmed as modified.

GLAZE and IMBER, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. This court invited the American Bar Association Standing Committee on Professional Discipline to "examine the structure, operations, and procedures of our lawyer disciplinary system for the purpose of making recommendations for improvements to the system." *See In Re: Amendments to the Procedures Regulating Professional Conduct of Attorneys at Law*, 345 Ark. 675 (2001) (per curiam). Pursuant to that Standing Committee's report, and after reviewing comments and making further deliberations, we adopted the procedures that are now in place. *Id.* Yet, the majority today has refused to apply the plain and ordinary language of our recently adopted rules in order to reach the result it feels is equitable. While I can empathize with Attorney Gillaspie in this case, abandoning our own rules of procedure to reach a desired result only tears at the foundation of our established system for adjudicating matters of attorney discipline. In my view, the preservation of the rule of law is at stake here. I must therefore respectfully dissent.

The majority holds that an attorney need not file a response to a formal complaint filed by the Committee on Professional Conduct when an admission of fault by the attorney is attached as an exhibit to the complaint. Our rules make no such exception. Indeed, the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law (hereinafter "the Procedures") are clear and unambiguous:

> (1) An attorney's failure to provide, in the prescribed time and manner, a written response to a formal complaint served in compliance with Section 9(A)(2) shall constitute separate and distinct grounds for the imposition of sanctions notwithstanding the merits of the underlying, substantive allegations of the complaint; or,
>
> (2) May be considered for enhancement of sanctions imposed upon a finding of violation of the Model Rules.
>
> (3) The separate imposition or the enhancement of sanctions for failure to respond may be accomplished by the panel's notation of

such failure in the appropriate sanction order and shall not require any separate or additional notice to the respondent attorney.

(4) Failure to respond to a formal complaint shall constitute an admission of the factual allegations of the complaint and shall extinguish a respondent's right to a public hearing.

> (a) Provided, however, that a respondent attorney, within the time specified in Section 10(D) (3), may file with the Executive Director an original and eight (8) copies of a petition for reconsideration, stating, on oath, compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond. Otherwise, the panel's decision shall be final and will be filed of record with the Clerk.

* * * *

> (d) If the petition for reconsideration is denied, the panel's original decision and imposition of sanctions become final and will be filed of record with the Clerk. Appeal from the Committee's denial of reconsideration and the imposition of sanctions may be taken in the time and manner prescribed by the applicable provisions of Section 12. Provided, however, that such appeal cannot attack the substantive allegations of the complaint and shall be limited to the panel's denial of reconsideration.

Proced. Regulating Prof'l Cond. § 9(C) (2003). There is no doubt that an attorney's failure to provide a written response to a formal complaint shall constitute separate and distinct grounds for the imposition of sanctions. Proced. Regulating Prof'l Cond. § 9(C) (2003). The majority completely ignores that rule and states "[w]e see no reason for Mr. Gillaspie to file a second document stating: 'I admit that the untimely filing of the Notice of Appeal is my fault,' when . . . the Office already had Mr. Gillaspie's response and admission of fault on file." The reason we require an attorney to file a response is quite simple: to preserve the rules established by this court. The majority opinion begs the question — under what factual scenario will this court decide to apply its rules?

An attorney who fails to file a timely response to a formal complaint may file a petition for reconsideration, stating, on oath, compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond. Proced.

Regulating Prof'l Cond. § 9(C)(4)(a) (2003). However, an appeal from the denial of a petition to reconsider and the imposition of sanctions "shall be limited to the panel's denial of reconsideration." Proced. Regulating Prof'l Cond. § 9(C)(4)(d) (2003).

The question before this court is whether Attorney Gillaspie's petition for reconsideration identified compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond. The term "unavoidable circumstances" is defined by the Procedures as "circumstances not attributable to negligence, carelessness, fault, or the lack of diligence on the part of the respondent attorney." Proc. Regulating Prof'l Cond. § 2(M) (2003). The petition cited three primary reasons for his failure to respond: (1) he had no defense to assert; (2) he was ignorant of the rules governing the proceedings; and (3) the penalty in this case is too harsh.

First, Attorney Gillaspie's assertion that he did not have a defense to assert simply does not relieve him of his responsibility to file a response. The lack of a defense is not a circumstance that justifies a failure to respond under the Procedures. The Procedures speak in terms of unavoidable circumstances that *excuse* an attorney's failure to respond. In other words, to excuse or justify the failure to respond, a respondent attorney must show circumstances that are outside of his or her control. Furthermore, a disciplinary proceeding involves not only a determination of guilt, but also the imposition of sanctions. Admitting guilt does not relieve an attorney from the obligation to file a response that may weigh on the sanction imposed by the Committee. Indeed, the cover letter accompanying the formal disciplinary complaint notified the respondent attorney that communicating with the Office about a negotiated disposition by consent would not eliminate his obligations to timely file a written response to the formal complaint.

The second excuse, as pled by Attorney Gillaspie, is that he was ignorant of the procedures and consequences contained in the Procedures. Being ignorant of the rules is not a justifiable excuse. Moreover, the respondent attorney here was directed to the pertinent rules and informed that his failure to respond might subject him to adverse consequences. In the criminal context, we have reiterated the old maxim that "ignorance of the law is never an excuse to a criminal charge." *See, e.g., Owens v. State,* 354 Ark. 644, 128 S.W.3d 445 (2003) (citing *Williams v. State,* 346 Ark. 304,

309, 57 S.W.3d 706, 710 (2001)). The same is true in civil matters. *See Hogg v. Jerry,* 299 Ark. 283, 773 S.W.2d 84 (1989) (explaining ignorance of a duty to register securities, or to procure their exemption, can in no way excuse the failure to do so); *Dunkin v. Citizens Bank of Jonesboro,* 291 Ark. 588, 727 S.W.2d 138 (1987) (stating that ignorance of the law has never served as a good reason or an excuse for a failure to present proof to the trial court). Ignorance of the Procedures is not a sufficient excuse to justify Attorney Gillaspie's failure to respond.

For his last excuse, Attorney Gillaspie suggests that the severe sanctions imposed by the Committee warrant reconsideration. Such an argument, however, ignores the fact that the respondent attorney was required to file a response to the complaint <u>before</u> the Committee made its findings. The severity of a sanction cannot excuse or justify an attorney's failure to file a response to the formal complaint. To rule otherwise would be to get the proverbial "cart before the horse."

Therefore, I conclude that Attorney Gillaspie provided no "compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond" to the formal complaint. Proced. Regulating Prof'l Cond. § 9(C)(4)(a). Accordingly, I cannot say that the Committee's denial of reconsideration was clearly erroneous.

While section 9(C) of the Procedures precludes this court from ruling on the severity of the sanctions imposed by the Committee, the court can address whether the sanctions imposed by the Committee were within the range authorized by the procedures. The procedures provide that a lawyer's privilege to practice law may be suspended not longer than five years when a panel finds that the lawyer has engaged in "serious misconduct." *See* Proced. Regulating Prof'l Cond. § 17(E)(2) (2002). Attorney Gillaspie asserts on appeal that his conduct does not rise to the level of "serious misconduct" that is required to restrict a lawyer's license under section 17 of the Procedures Regulating Professional Conduct. He buttresses his point by simply listing factors the Committee is required to consider under the Procedures. *See* Proced. Regulating Prof'l Cond. § 19 (2003).

The two sections of the Procedures cited by Attorney Gillaspie state in pertinent part:

B. Serious Misconduct. Serious misconduct is conduct in violation of the Model Rules[1] that would warrant a sanction terminating or restricting the lawyer's license to practice law. Conduct will be considered serious misconduct if any of the following considerations apply:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in or is likely to result in substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the lawyer;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The lawyer's prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime" as defined in these Procedures.

Proced. Regulating Prof'l Cond. § 17(B) (2003).

\* \* \* \*

In addition to any other considerations permitted by these Procedures, a panel of the Committee, in imposing any sanctions, shall consider:

A. The nature and degree of the misconduct for which the lawyer is being sanctioned.

B. The seriousness and circumstances surrounding the misconduct.

C. The loss or damage to clients.

---

[1] The Procedures define the term "Model Rules" to include any "rules adopted by the Arkansas Supreme Court regulating the professional conduct of attorneys at law." Proced. Regulating Prof'l Cond. § 2(G) (2003). The Procedures "were promulgated for the purpose of regulating the professional conduct of attorneys at law . . . ." Proced. Regulating Prof'l Cond. § 1(A) (2003). Thus, a violation of the Procedures constitutes a violation of the "Model Rules" as contemplated by the Procedures.

D. The damage to the profession.

E. The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

F. The profit to the lawyer.

G. The avoidance of repetition.

H. Whether the misconduct was deliberate, intentional or negligent.

I. The deterrent effect on others.

J. The maintenance of respect for the legal profession.

K. The conduct of the lawyer during the course of the Committee action.

L. The lawyer's prior disciplinary record, to include warnings.

M. Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery.

Proced. Regulating Prof'l Cond. § 19 (2003). While section 19 of the Procedures uses mandatory language, we have recognized that the Committee is not required to set out its findings. *Mays v. Neal,* 327 Ark. 302, 938 S.W.2d 830 (1997).

Here, Attorney Gillaspie's repeated failure to timely file documents comes within several of the considerations listed in section 19 of the Procedures. The consistent failure to act prudently in the representation of several clients does damage to the reputation of the legal profession. Proced. Regulating Prof'l Cond. § 19 (D). A severe sanction is necessary in such circumstances to assure that those who seek legal services in the future will be protected from the type of misconduct found here — the failure to timely file documents. Proced. Regulating Prof'l Cond. § 19 (E). Specifically, civil litigants are not given the same protections as criminal defendants when documents are filed late. *See, e.g., Morris*

*v. Stroud,* 317 Ark. 628, 883 S.W.2d 1 (1994). Attorney Gillaspie's failure to heed prior sanctions shows that a severe sanction was necessary to avoid repetition of the misconduct. Proced. Regulating Prof'l Cond. § 19 (G). Furthermore, Attorney Gillaspie once again failed to file a timely response to the disciplinary action brought against him by the Committee. *See* Proced. Regulating Prof'l Cond. § 19 (K). Finally, the record reveals that Attorney Gillaspie has a substantial listing of prior disciplinary sanctions. Proced. Regulating Prof'l Cond. § 19 (L).

Considering all the factors enunciated in Section 19 of the Procedures, I conclude that respondent attorney's conduct in this case satisfies at least two of the stated considerations in section 17 of the Procedures. Specifically, Attorney Gillaspie's prior record of public sanctions reveals a pattern of similar misconduct and demonstrates a substantial disregard of his professional duties and responsibilities. *See* Proced. Regulating Prof'l Cond. § 17 (B)(4), (5). Between the years 1989 and 2002, Attorney Gillaspie was sanctioned seven separate times. Six of the seven sanctions stemmed from a failure to timely file various documents, including notices of appeal, records, and briefs. The first sanction occurred because Attorney Gillaspie erroneously informed his client that he had filed her divorce action; then his phone was disconnected and the client was told he had left town. Attorney Gillaspie's professional misconduct has merited four reprimands, two warnings, and an order to enroll in the Arkansas Lawyers Assistance Program (ARLAP).[2]

The majority agrees that Attorney Gillaspie's failure to timely file a notice of appeal is "serious misconduct," but suggests that the failure to respond to a formal complaint can never constitute serious misconduct. That suggestion is contrary to the plain language of our rules. Section 19 of the Procedures *requires* the panel to consider thirteen factors when imposing *any* sanction, including a sanction for the failure to respond to a formal complaint. Thus, for the same reasons Attorney Gillaspie's conduct in failing to timely file a notice of appeal falls within the ambit of "serious misconduct," Attorney Gillaspie's failure to respond to the Committee's formal complaint also falls within the scope of "serious misconduct" as defined by the Procedures.

---

[2] In his petition for reconsideration, Attorney Gillaspie admits to being referred to ARLAP and failing to enroll.

There is ample evidence in the record to support a finding of serious misconduct under section 17 of the Procedures. Furthermore, the sanctions imposed by the Committee were within the range authorized by the Procedures. Thus, I cannot conclude that the Committee's findings and sanctions are clearly erroneous.

The majority, on the other hand, has ignored our own rules of procedure and side-stepped the Committee to decide what it feels is a proper and equitable sanction. This is evident from the internal inconsistency within the majority opinion itself. Specifically, the majority holds that the Committee erred in sanctioning Attorney Gillaspie for his failure to respond to the formal complaint; yet, it increases the sanction for his failure to timely file a notice of appeal by adding a nine-month probation under the supervision of ARLAP. In so holding, the majority avoids the application of this court's own rules of procedure and supplants the Committee's judgment with its own. If the majority insists on establishing such a precedent, the Procedures and the Committee should be abolished and this court should be the one and only panel adjudicating matters of attorney discipline.

GLAZE, J., joins.