Cite as 2020 Ark. 122

# SUPREME COURT OF ARKANSAS

No. D-18-726

| | |
|---|---|
| CHARLES DWAIN OLIVER, ARKANSAS BAR NO. 2001009 APPELLANT <br><br> V. <br><br> STARK LIGON, AS EXECUTIVE DIRECTOR OF THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT APPELLEE | **Opinion Delivered:** March 19, 2020 <br><br> APPEAL FROM THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT, AN ORIGINAL ACTION [NO. CPC-2018-003] <br><br> <u>AFFIRMED</u>. |

**RHONDA K. WOOD, Associate Justice**

The Supreme Court Committee on Professional Conduct Panel B ("Committee") suspended Charles Oliver's license to practice law for five years. Though duly served, Oliver never responded to the formal complaint. Oliver filed a pro se petition for reconsideration after the suspension was ordered. The Committee denied the petition, finding that Oliver failed to present compelling or cogent evidence justifying his default. Oliver now appeals the order denying his petition. We affirm.

The Committee made the following findings in its suspension order. In 2015, Oliver drafted a will for Jimmie Sue Bryant Roark. On November 1, 2016, Roark returned to Oliver and requested that he draft a second will to replace the first. Oliver obliged. A few days later, on November 10, Oliver drafted a third will at Roark's request. In each will, Oliver was designated as the probate attorney. Roark died on January 1, 2017. Rather than probate Roark's final November 10 will, Oliver attached the November 1 will to the petition. He

did not disclose the November 10 will to the court or certain beneficiaries. Due to this, and other allegations of misconduct during the probate process, the circuit court removed Oliver as attorney for the estate. The court reported Oliver's conduct to the Office of Professional Conduct ("OPC"), and an investigation ensued.

On July 29, 2017, Oliver sent a letter to the OPC that he characterized as his official response to the circuit court's allegations against him. In his response, he denied wrongdoing and explained he did not probate the November 10 will because he did not believe Roark was competent when he prepared it for her and allowed her to execute it. Nearly six months later, on January 5, 2018, the OPC concluded its investigation and filed a formal complaint. Oliver was duly served with the complaint and summons. The summons contained the following language in bold typeface:

> **WARNING: Failure to timely file a written response to this Complaint can carry substantial adverse consequences and penalties, including that all allegations in the complaint will be deemed admitted, and you lose your right to a public hearing.**

Despite this warning, Oliver never filed a response to the OPC complaint. Consequently, the Committee suspended Oliver for five years for his misconduct and reprimanded him for not responding to its complaint. Oliver timely filed a pro se petition for reconsideration, arguing that the earlier letter was a response, and that he was entitled to a hearing. The Committee denied the petition, and Oliver appealed.

We review Committee decisions de novo on the record. *Ligon v. Rees*, 2010 Ark. 223, at 6, 364 S.W.3d 19, 23. We will affirm the Committee's actions unless they are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been

2

committed. *Id*. Notably, we construe court rules the same as statutes. *E.g.*, *Aikens v. State*, 368 Ark. 641, 643, 249 S.W.3d 788, 790 (2007). If the rule's language is plain and unambiguous, our analysis ends there. *See Ford v. Keith*, 338 Ark. 487, 498, 996 S.W.2d 20, 27 (1999).

Section 9(B)(1) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law ("Procedures") states that "[u]pon service of a formal complaint . . . the attorney shall have thirty (30) days in which to file a written response." Failure to respond to a formal complaint "shall constitute an admission of the factual allegations of the complaint and shall extinguish a respondent's right to a public hearing." *Id*. § 9(C)(4). Nevertheless, the Committee may permit an attorney to file a belated response and receive a hearing if the attorney files a petition for reconsideration establishing by clear and convincing evidence "compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond." *Id*. § 9(C)(4)(a)−(c). Unavoidable circumstances are "circumstances not attributable to negligence, carelessness, fault, or the lack of diligence on the part of the respondent attorney." *Id*. § 2(M).

Rather than point to any evidence of unavoidable circumstances, Oliver's petition argued that the letter he sent the OPC—nearly six months before service of the formal complaint—was a sufficient response. On appeal, he again asserts that his letter was a response and that he was therefore not required to justify or excuse his actions. To support this theory, Oliver points to *Gillaspie v. Ligon*, 357 Ark. 50, 160 S.W.3d 332 (2004).

In that case, Gillaspie admitted in a motion for belated appeal that he had untimely filed a notice of appeal. *Id*. at 51, 160 S.W.3d at 335. Misconduct charges were pursued based on this admission, but Gillaspie never responded to the formal complaint. *Id*. at 52, 160

S.W.3d at 335. On appeal, we considered whether the Committee erred when it enhanced Gillaspie's sanction, further suspended him, and further fined him for failing to respond to the formal complaint. *Id*. at 55, 160 S.W.3d at 335. In concluding that the Committee erred, we reasoned that it was unnecessary for Gillaspie to assert "unavoidable circumstances" for failure to respond pursuant to section 9(C)(4)(a) because his formal admission of fault was already on file. *Id*. Indeed, Gillaspie's admission of fault was the very basis of the complaint. *Id*. Because his first admission was directly responsive to the complaint, we simply concluded that, given "these facts," he should not have been further punished for failing to admit to the wrongdoing again. *Id*.

Here, Oliver's initial letter was a response to the circuit court's allegations to the OPC, not the official OPC complaint filed after a thorough investigation. And the initial letter was not a response to the eleven different rule violations Oliver was accused of committing. The formal complaint alleged the following violations of the Arkansas Rules of Professional Conduct: Rule 1.1, for incompetent representation; Rule 1.16, for failure to withdraw when he realized that he could be called as a witness; Rule 3.1(a)(1), for probating the wrong will without a basis in law and fact; Rule 3.3(a)(1), for making false statements to a tribunal; Rule 3.3(a)(3), for presenting false evidence to a tribunal; Rule 3.4(a), for failing to give heirs of the estate notice of the earlier will; Rule 3.4(c), for disobeying a legal obligation; Rule 3.7(a), for advocating at a trial in which he was likely to be called as a witness; Rule 8.4(a), for knowingly violating the rules of professional conduct; Rule 8.4(c), for engaging in dishonesty, fraud, deceit, or misrepresentation; and Rule 8.4(d), for engaging in conduct prejudicial to the administration of justice. Oliver's letter, on the other hand, merely

4

explained why he chose to probate the wrong will, and why he thought it was appropriate to do so.

Moreover, unlike in *Gillaspie*, Oliver maintains that he did not engage in misconduct. In fact, Oliver's petition "adamant[ly]" declared "that he did no wrong . . . and should have an opportunity to defend himself." In contrast, Gillaspie fully admitted to the alleged misconduct and posed no challenge to the underlying sanction. Instead, he argued only that the committee should not have *enhanced* his sanction, *further* suspended him, and *further* fined him for not responding to what he had already admitted fault in doing. The specific and unique facts in *Gillaspie* are not the facts here.

Finally, despite both the plain language of section 9(B)(1) of the Procedures that the response should follow service of the complaint and the conspicuous language in the summons that a further response was required, Oliver's reliance on the letter as his response does not itself constitute an unavoidable circumstance. Oliver should have known that his earlier response to informal allegations would not suffice. The Committee's denial of reconsideration was not clearly erroneous.

Affirmed.

Special Justice WILLIAM P. (BILL) WATKINS joins in this opinion.

WYNNE, J., not participating.

*Jeff Rosenzweig*, for appellant.

*Charlene A. Fleetwood*, Office of Professional Conduct, for appellee.