Cite as 2020 Ark. 120

# SUPREME COURT OF ARKANSAS

**No.** D-18-998

|  |  |
|---|---|
|  | **Opinion Delivered:** March 19, 2020 |
| CHARLES DWAIN OLIVER, ARKANSAS BAR NO. 2001009 APPELLANT <br><br> V. <br><br> STARK LIGON, AS EXECUTIVE DIRECTOR OF THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT APPELLEE | APPEAL FROM THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT, AN ORIGINAL ACTION [NOS. CPC-2018-007, CPC-2018-008, CPC-2018-009] <br><br><br><br> AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Charles Dwain Oliver appeals from the denial of his petitions to reconsider the imposition of a five-year suspension from the practice of law after he failed to file responses to three disciplinary complaints against him filed by appellee Stark Ligon, as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct ("Committee").[1] For reversal, Oliver argues that the Committee should have granted his petition for reconsideration and that this court should reverse and remand for a hearing on the merits of the complaints. Our jurisdiction is pursuant to section 9(C) of the Arkansas

---

[1]The three complaints in CPC-2018-007, CPC-2018-008, and CPC-2018-009 were consolidated into one record for this appeal. Our decision in a separate appeal from Oliver in a companion case, *Oliver v. Ligon*, 2020 Ark. 122 (D-18-726), is also being handed down on this date.

Supreme Court Procedures Regulating Professional Conduct ("Procedures"). We affirm the Committee's decisions.

Oliver became licensed to practice law in 2001. He served as City Attorney and maintained a solo practice in Hampton, Arkansas, prior to the disciplinary complaints currently before the court. In addition to the current actions, Oliver has a disciplinary record that includes a warning in 2005 for violations of Arkansas Professional Rules 1.2(a), 1.3, 1.4(a), 1.5(c), 1.16(d), and 3.2; a caution and a fine in 2006 for violations of Rules 1.4(a)(4), 1.16(d), and 4.4; a caution and a fine in 2007 for violations of Rules 1.2(a), 1.3, 1.4(a)(3), 1.4(a)(4), 3.4(c), 8.4(c), and 8.4(d); a caution in 2009 for violations of Rules 1.7(a) and 8.4(d); a reprimand and a fine in 2017 for violations of Rules 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 8.1, and 8.4(c), along with a reprimand and a fine for his failure to file a response to the complaint; and a four-month suspension and $1,500 in restitution in 2018 for violations of Rules 1.1, 1.3, 1.4(a)(3), 8.1, and 8.4(c), along with a reprimand for again failing to file a response.

With regard to the disciplinary actions giving rise to the current appeal, the complaint in CPC–2018-007 set forth the following allegations. One of Oliver's former clients, Milton Parker, retained Oliver in 2010 and paid him $800 to have Milton's criminal records expunged. Parker subsequently made several unsuccessful attempts to contact Oliver. Oliver did obtain an order to seal Parker's record from one of his criminal convictions. However, after Parker failed a background check associated with an adoption in 2015, he again tried to contact Oliver to no avail. Parker claimed that Oliver was hired to expunge all of his criminal records, and he filed a grievance with the Office of Professional Conduct ("OPC") in mid-2015 after being unable to contact Oliver or obtain a refund for the fees he had paid.

2

According to the complaint, the OPC had also unsuccessfully attempted to obtain a response from Oliver regarding Parker's grievance. The Committee alleged that Oliver's conduct violated Rules 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 8.1, and 8.4(c) of the Arkansas Rules of Professional Conduct.

In CPC-2018-008, the Committee alleged that Larry Romine, Sr., had hired Oliver in August 2015 to expunge his son's criminal record and paid him $350. Oliver did not take any action or file any pleadings on behalf of Romine's son, nor did he refund the fees. Romine filed a grievance with the OPC in June 2017, and Oliver again failed to respond to the OPC's repeated emails, letters, and phone calls. The Committee alleged that Oliver violated Rules 1.1, 1.3, 8.1, and 8.4(c).

The allegations in CPC-2018-009 were based upon a grievance filed by Steven Harrelson, who had also hired Oliver to expunge his criminal record. Harrelson complained that after he paid Oliver an $800 fee in October 2014, Oliver did not take any action or file any pleadings on his behalf despite promises to do so and did not refund the fee. Harrelson eventually complained to the OPC in late 2017. The complaint filed by the Committee asserted that Oliver had failed to respond to the allegations and that he had violated Rules 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 8.1, and 8.4(c).

The complaints in each of these cases were served on Oliver on February 5, 2018. Oliver did not file a written response to any of the complaints. On March 19, 2018, Panel B of the Committee ordered Oliver to appear for a hearing regarding his failure to respond to the pending disciplinary matters. At the hearing, Oliver stated that he had not responded to the allegations because he had been "busy trying to survive." He indicated that he had been

3

through a rough time following his wife's death in 2011 and that maybe he "should have just shot [himself]." The Committee asked Oliver if he had any objection to a mental health evaluation, and he indicated that it might be helpful for him.

An order was entered on April 20, 2018, directing Oliver to undergo a psychiatric evaluation and postponing the Committee's decision on the complaints until after the evaluation had been completed. Oliver failed to appear for the scheduled examination, and he did not respond to either the psychiatrist's or the Committee's attempts to contact him. On May 7, 2018, the Committee issued another written order directing him to submit to an evaluation. The Committee requested that Oliver provide specific dates and times at which he would be available and indicated that he would be held in contempt if he failed to attend the appointment. He finally underwent the evaluation on May 24, 2018.

After receiving the psychiatric report, the Committee issued decisions on August 21, 2018, finding that Oliver had violated the rules alleged in each of the three disciplinary complaints. The Committee imposed a five-year suspension in each case and also ordered restitution ($800 in CPC-2018-007, $350 in CPC-2018-008, and $800 in CPC-2018-009) and costs. The orders stated that Oliver's failure to respond to the complaints constituted an admission to the factual allegations of the complaints and extinguished his right to a de novo hearing. The Committee also formally reprimanded Oliver for his failure to respond to the complaints.

On September 6, 2018, Oliver filed petitions for reconsideration of the Committee's decisions pursuant to section 9(C)(4) of the Arkansas Supreme Court Procedures Regulating Professional Conduct of Attorneys at Law. In the affidavits attached to the petitions, Oliver

4

stated that he did not recall receiving notice of the formal complaints, although he admitted that he had been depressed and unable to deal with the disciplinary matters during that time period. He further averred that he had met with the staff attorney of the OPC during the investigations and that he had offered to either complete the work in each case or return any unearned fees. He claimed that those facts constituted compelling and cogent evidence of unavoidable circumstances sufficient to excuse his failure to respond, especially given the Committee's awareness of the mental-health issues that he had faced.

The OPC staff attorney responded to the motions and offered proof that Oliver had accepted service of each of the complaints. The response further noted that Oliver's offer to complete the work or return the fees to his former clients was not accepted by the OPC and that Oliver also did not follow through with those promises in the months following that meeting. The Committee denied Oliver's petitions for reconsideration on October 19, 2018. The Committee found that his petitions "failed to demonstrate compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify [his] failure to respond." Oliver filed timely notices of appeal from the Committee's orders.

On appeal, Oliver argues that the Committee should have granted his motions for reconsideration of his five-year suspensions from the practice of law, which were entered after he failed to respond to the formal disciplinary complaints. He requests that this court reverse and remand for a full hearing on the allegations raised in the complaints.

We review appeals from the Committee de novo, and we determine in our review whether the factual findings were clearly erroneous or whether the result reached was arbitrary or groundless. *Donovan v. Supreme Court Comm. on Prof'l Conduct*, 375 Ark. 350, 290

S.W.3d 599 (2009). We give due deference to the Committee's superior position to evaluate the credibility of witnesses. *Id*.

Section 9 of the Procedures requires that, when disciplinary action is taken against an attorney, the Committee shall "furnish to the attorney complained against a copy of the formal complaint and advise the attorney that he or she may file a written response in affidavit form with any supporting evidence desired." Ark. Sup. Ct. P. Regulating Prof'l Conduct § 9(A)(1) (2018). Following effective service, the attorney has thirty days to respond to the complaint in writing. *Id*. § 9(B). If the attorney does not respond or request an extension of time to respond within the thirty days, the factual allegations of the complaint are considered admitted, the attorney's right to a public hearing is extinguished, and a separate imposition of sanctions may be imposed for the failure to respond. *Id*. § 9(C). In such circumstances, the attorney is entitled to file a petition for reconsideration within twenty days of service of the panel's decision to impose sanctions. *Id*. The petition for reconsideration must state, under oath, "compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond." *Id*. § 9(C)(4)(a). Unavoidable circumstances are defined as "circumstances not attributable to negligence, carelessness, fault, or the lack of diligence on the part of the respondent attorney." *Id*. § 2(M).

If a majority of the panel, upon a finding of clear and convincing evidence, votes to grant the petition for reconsideration, it may permit the attorney to file a belated response and/or set aside any sanction imposed solely on the basis of the attorney's failure to respond. *Id*. § 9(C)(4). If the petition to reconsider is denied, the panel's original decision and imposition of sanctions become final and will be filed of record with the Clerk. *Id*. An appeal

6

from the denial of reconsideration may be taken; however, such an appeal cannot attack the substantive allegations of the complaint and shall be limited to the panel's denial of reconsideration. *Id.*

On appeal, Oliver does not contest that he was properly served with the complaint, and indeed, the record demonstrates that he personally accepted service. He instead argues that his failure to respond should be excused because he appeared before the Committee, explained his emotional problems, and admitted that he either needed to perform the requested services for his clients or return the fees. He contends that his appearance under oath is the functional equivalent of a written response and should be treated as such. Thus, Oliver asserts that he should be permitted to file a written response and have the issues heard on the merits.

We cannot say that the Committee's decision to deny Oliver's motions for reconsideration was clearly erroneous. Section 9(C)(4)(a) requires that the attorney establish "compelling and cogent evidence of unavoidable circumstances sufficient to excuse or justify the failure to respond." The primary argument presented by Oliver to justify his failure to respond is the fact that he had appeared before the Committee to explain his emotional problems and that he had offered to either perform the legal services for his clients or refund their money. However, under the plain language of section 9(C)(1), an attorney is required to file "in the prescribed time and manner, a written response to a formal complaint[,]" and the failure to do so is itself a sanctionable offense. Neither Oliver's informal meeting with the OPC staff attorney, nor his appearance before the Committee to explain his failures to respond, constituted a written response to the allegations in the formal complaints.

7

Oliver cites *Gillaspie v. Ligon*, 357 Ark. 50, 160 S.W.3d 332 (2004), as support for his argument that his appearance before the Committee should be deemed a response under section 9. In *Gillaspie*, we held that the attorney did not need to respond to the complaint, which stemmed from his failure to file a notice of appeal on behalf of his client, where his formal admission of fault in the form of a motion for belated appeal was already on file with the Committee. *Id.* In fact, we noted that this admission was the basis for the disciplinary complaint itself. *Id.*

Our decision in *Gillaspie* is distinguishable from the situation here. Oliver has not filed a written admission of fault in this case. Furthermore, while he did appear before the Committee, he did so only after he had repeatedly refused to respond either to the OPC's inquiries or to the formal complaint, and after he was ordered to appear for an evidentiary hearing. We agree with the Committee that neither Oliver's appearance at the hearing, nor his belated offer to perform the work for his clients or refund their fees, was sufficient under section 9(C)(4)(a) to excuse or justify his failure to respond to the allegations in the formal complaints. Accordingly, because the Committee did not clearly err in denying his motions for reconsideration, we affirm.

Affirmed.

Special Justice WILLIAM P. (BILL) WATKINS joins in this opinion.

HART, J., concurs in part and dissents in part.

WYNNE, J., not participating.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.**

I agree that the committee's denial of Oliver's motion for reconsideration does not warrant

reversal. I write separately to address what I perceive as a disparity between the disciplinary suspensions Oliver is receiving in his respective cases.

In Oliver's companion case, *Oliver v. Ligon*, 2019 Ark. 122 (D-18-726), Oliver is receiving a five-year suspension for probating what he knew was not the current will for one of his clients. Oliver offered an explanation to the judge in whose court this alleged misconduct occurred, but based upon the findings of the committee, I cannot say this was an inappropriate sanction. However, that matter involves allegations akin to malfeasance.

In the present matter, the allegations, which amount to a failure to complete the work he was hired to complete, are more akin to nonfeasance. Obviously, this distinction does not mean that Oliver's actions here are unworthy of the committee's attention, and I acknowledge that this is not the first time Oliver has received this sort of complaint. Still, short of wholesale disbarment, a five-year suspension is the most serious sanction contemplated under the rules. *See* Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(D)–(E). The different character of the allegations at issue here should warrant a different treatment. I think the discipline imposed in the present matter should be less punitive than the discipline imposed in Oliver's companion case.

Concurring in part; dissenting in part.

*Jeff Rosenzweig*, for appellant.

*Charlene A. Fleetwood*, Office of Professional Conduct, for appellee.